B 5 (Official Form 5) (12/07)

# UNITED STATES BANKRUPTCY COURT
### District of Nevada

| | **INVOLUNTARY PETITION** |
|---|---|

| IN RE (Name of Debtor – If Individual: Last, First, Middle)<br><br>South Edge, LLC | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.)<br><br>n/a |
|---|---|

Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all.): 200090011

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>3455 Cliff Shadows Pkwy, Ste 220, Las Vegas, NV 89129 | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br>c/o FERA, LLC, 3455 Cliff Shadows Pkwy, Suite 200, Las Vegas, NV |
|---|---|
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>Clark<br><br>ZIP CODE<br>89129 | <br><br><br>ZIP CODE<br>89129 |

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)
1890 Via Firenze Road, Henderson, NV 89044

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

☐ Chapter 7      ☒ Chapter 11

## INFORMATION REGARDING DEBTOR (Check applicable boxes)

| Nature of Debts<br>(Check one box.)<br><br>Petitioners believe:<br><br>☐ Debts are primarily consumer debts<br><br>☒ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br><br>☐ Individual (Includes Joint Debtor)<br>☒ Corporation (Includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | Nature of Business<br>(Check one box.)<br><br>☐ Health Care Business<br>☒ Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other |
|---|---|---|

| VENUE | FILING FEE (Check one box) |
|---|---|
| ☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ☒ Full Filing Fee attached<br><br>☐ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]* |

## PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER
### OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor<br>n/a | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

## ALLEGATIONS
### (Check applicable boxes)

| | COURT USE ONLY |
|---|---|

1. ☒ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).

2. ☒ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.

3.a. ☒ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

b.☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

ny-951638

B 5 (Official Form 5) (12/07) – Page 2

Name of Debtor South Edge, LLC

Case No. _____

## TRANSFER OF CLAIM

☒ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). This check mark is intended solely to identify the information presented in the Attachment incorporated herein by this reference and does not constitute an admission beyond that response.

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

x _____
Signature of Petitioner or Representative (State title)
Managing Director

JPMorgan Chase Bank, N.A.
Name of Petitioner

Address of Individual
Signing in Representative       John P. McDonagh
Capacity

383 Madison Avenue, 23rd Floor
New York, New York 10179

Date Signed 12/9/10

x _____
Signature of Attorney          9 Dec 2010
                               Date

Lewis and Roca LLP
Name of Attorney Firm (if any)

3993 Howard Hughes Parkway #600, Las Vegas, NV 89169
Address

(702) 949-8320
Telephone No.

x _____
Signature of Attorney          12/9/10
                               Date

Morrison & Foerster LLP
Name of Attorney Firm (if any)

425 Market Street, San Francisco, California 94105-2482
Address

(415) 268-7000
Telephone No.

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim See Attachment | Amount of Claim $ 13,423,516 |
|---|---|---|
| JPMorgan Chase Bank, N.A. 383 Madison Avenue, 23rd Floor New York, New York 10179 | | |

Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above.

Total Amount of Petitioners' Claims
see claims summary on following pages

1 continuation sheets attached

ny-951638

B 5 (Official Form 5) (12/07) – Page 2           Name of Debtor South Edge, LLC _____

                                            Case No. _____

### TRANSFER OF CLAIM

☐   Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

### REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x _(signature)_ | x _(signature)_    12-8-10 |
| Signature of Petitioner or Representative (State title) Managing Director | Signature of Attorney    Date |
| | Jolley Urga Wirth Woodbury & Standish |
| | Name of Attorney Firm (If any) |
| | Brian Holthus, Esq. |
| x _(signature)_ | |
| Signature of Petitioner or Representative (State title) Managing Director | 3800 Howard Hughes Parkway, Suite 1600, Las Vegas, NV 89169 |
| | Address |
| Credit Agricole Corporate and Investment Bank   12/8/10 | |
| Name of Petitioner                Date Signed | (702) 699-7500 |
| Name & Mailing | Telephone No. |
| Address of Individual     Alan Sidrane & Ronald Spitzer | |
| Signing in Representative | |
| Capacity           1301 Avenue of the Americas | |
|                  New York, New York 10019-6022 | |
| | x _(signature)_    12-8-10 |
| | Signature of Attorney    Date |
| | Haynes and Boone, LLP |
| | Name of Attorney Firm (If any) |
| | Charles A. Beckham, Jr., Esq. |
| | |
| | One Houston Center, 1221 McKinney Street, Suite 2100 |
| | Houston, Texas 77010 |
| | Address |
| | |
| | (713) 547-2243 |
| | Telephone No. |

### PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Credit Agricole Corporate and Investment Bank 1301 Avenue of the Americas New York, New York 10019-6022 | See Attachment | $ 20,269,826 |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims *see claims summary on following pages* |

_____ continuation sheets attached

ny-951638

B 5 (Official Form 5) (12/07) — Page 2

Name of Debtor South Edge, LLC _____

Case No. _____

| TRANSFER OF CLAIM | |
|---|---|

☒ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). This check mark is intended solely to identify the information presented in the Attachment incorporated herein by this reference and does not constitute an admission beyond that response.

| REQUEST FOR RELIEF |
|---|

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

x  R. Sott H_____
Signature of Petitioner or Representative (State title)
Director – Special Situations Group

Wells Fargo Bank, N.A.          12/9/10
Name of Petitioner              Date Signed
Name & Mailing
Address of Individual           Scott Holtzapple
Signing in Representative
Capacity                        301 S. College Street, 4th Floor,
                                Charlotte, North Carolina 28202-6000

x  _____  9 Dec 2010
Signature of Attorney          Date

Lewis and Roca LLP
Name of Attorney Firm (if any)

3993 Howard Hughes Parkway #600, Las Vegas, NV 89169
Address

(702) 949-8320
Telephone No.

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner<br>Wells Fargo Bank, N.A.<br>301 S. College Street, 4th Floor<br>Charlotte, North Carolina 28202-6000 | Nature of Claim<br>See Attachment | Amount of Claim<br>$ 20,540,030 |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims<br>*see claims summary on following page* |

___ continuation sheets attached

ny-951638

B 5 (Official Form 5) (12/07) – Page 2        **Name of Debtor** <u>South Edge, LLC</u>

**Case No.** _____

| TRANSFER OF CLAIM |
|---|
| ☐   Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). |

### REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

x _____
     Signature of Petitioner or Representative (State title)

x _____
     Signature of Petitioner or Representative (State title)

Name of Petitioner        Date Signed

Name & Mailing
Address of Individual    _____
Signing in Representative
Capacity

x _____
     Signature of Attorney            Date

Name of Attorney Firm (If any)

Address

Telephone No.

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims<br><br>$54,233,372 |

___ continuation sheets attached

ny-951638

## ATTACHMENT TO INVOLUNTARY PETITION FILED AGAINST SOUTH EDGE, LLC

South Edge, LLC ("Debtor") is indebted to Petitioner JPMorgan Chase Bank, N.A. ("JPMorgan") for not less than $13,423,516 under the Facility A Note, dated November 1, 2004, and the Facility D Note, dated March 9, 2007, both between the Debtor and JPMorgan (collectively, the "Facility Notes"), which were issued pursuant to the Credit Agreement, dated November 1, 2004, among South Edge, LLC, as borrower, J.P. Morgan Chase Bank, N.A., as Administrative Agent, and the Lenders from time to time party thereto (as amended, modified and restated on March 9, 2007, and from time to time thereafter, the "Credit Agreement").

Petitioner herein, JPMorgan, solely in its capacity as lender, is the holder of a claim against the Debtor for principal and interest evidenced by the Facility Notes that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. Petitioner hereby confirms that, taken together, the value of the Petitioner's and the other involuntary petitioners' (collectively, the "Involuntary Petitioners") aggregate interests in the applicable liens on property of the Debtor securing the claims asserted in this Petition is in an amount at least $14,425 less than the principal and interest outstanding under the Involuntary Petitioners' Notes from South Edge issued under the Credit Agreement and referenced in this Petition.

Petitioner's claim herein arises under the Facility Notes and evidences the original Loans by Petitioner under the Credit Agreement. Petitioner does not include in this Petition any other claim, including any claim that has been acquired by Petitioner's secondary loan trading operation. Petitioner's secondary loan trading operation, in the ordinary course of its business, functions as a market-maker for certain debts, including the debt under the Credit Agreement. In this capacity, Petitioner acts through buying and selling positions in the debt of the Debtor arising under the Credit Agreement. The amount of exposure held by the secondary loan operation can therefore fluctuate. Petitioner has checked the Transfer of Claim box on the Petition; however, Petitioner submits that because the claim upon which Petitioner relies was not acquired by Petitioner, checking the box is not required and under the circumstances of this Petition could be misconstrued. Petitioner reserves the right to amend the Petition to cure any alleged technical defect and to supply additional information to the extent required by the Court.

Following the consummation of the Credit Agreement, Petitioner's secondary loan operation has acquired and sold positions in the Loans due from the Debtor under the Credit Agreement in the ordinary course of its secondary loan operations and not for the purpose of commencing this involuntary case. As of the date hereof, Petitioner holds the claims it acquired in connection with its secondary loan operations as described on Schedule A and in the documentation annexed to Schedule A, and such claims were not acquired for the purpose of commencing this case. Petitioner has not transferred any claims included in this Petition to the other Involuntary Petitioners. Certain confidential and proprietary information has been redacted on Schedule A and the attachments thereto.

Petitioner does not waive any rights, interests, remedies or liens it may have.

JPMorgan Chase Bank, N.A.

By: _____
John P. McDonagh

Title: Managing Director

ny-951638

Schedule A

Transferred Claims Not Used As A Basis For This Petition

As of the date hereof, Petitioner acquired and holds the following claims against the Debtor in the ordinary course of its secondary loan trading operations. Certain documentation concerning these claims including trade confirmations and Assignment and Assumptions, redacted to protect confidential and proprietary information, is annexed hereto. Petitioner is seeking authority to file unredacted copies of those documents under seal.

| Loan Reference: | Amount of Claim Purchased | Date of Purchase/Assignment | Price Paid |
|---|---|---|---|
| Amended and Restated Credit Agreement, dated March 9, 2007, among South Edge, LLC, as borrower, JPMorgan Chase Bank, N.A., as Administrative Agent, and the Lenders from time to time party thereto (as amended, modified and restated from time to time, the "Credit Agreement"). | $3,350,000.00<br><br>$583,333.33 | May 11, 2010<br><br>September 30, 2010 | Confidential<br><br>Confidential |

Additional claims against the Debtor purchased and sold by Petitioner in connection with its secondary loan trading operations are no longer held by Petitioner. A copy of the Credit Agreement is being filed in this case contemporaneous with this Petition as an exhibit to the Declaration of John P. McDonagh in Support of JP Morgan Chase Bank N.A.'s Motion to Appoint an Interim and Permanent Chapter 11 Trustee for South Edge, LLC During (i) the "Gap" Period and (ii) On a Permanent Basis.

ny-951638

**ATTACHMENT TO SCHEDULE A-1**

## LSTA DISTRESSED TRADE CONFIRMATION

**To:**   *JPMorgan Chase Bank, N.A.*



**From:**

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of January 12, 2010, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.



| | |
|---|---|
| **Trade Date:** | |
| **Seller:** | |
| **Buyer:** | JPMorgan Chase Bank, N.A. ☑ Principal ☐ Agent |
| **Credit Agreement:** | Amended and Restated Credit Agreement (of the original Credit Agreement dated November 1, 2004) dated March 9, 2007 among South Edge, LLC., The Lenders from time to time party thereto and JPMorgan Chase Bank N.A. as Administrative Agent. |
| **Borrower:** | SouthEdge, LLC |
| **Form of Purchase:** | Assignment |

**Purchase Amount /**
**Type of Debt:**

| | | | | |
|---|---|---|---|---|
| USD | 3,350,000.00 | Term | | |

**Purchase Rate:**

823676001

LSTA EFFECTIVE January 2010  Copyright © LSTA 2010.  All rights reserved.

**Accrued Interest:**   

**Credit Documents**   No
**to be provided:**

**Other Terms of Trade:**
    Assignment fee paid by Buyer

**Subject To:**   Negotiation, execution and delivery of reasonably acceptable contracts and instruments of transfer in accordance herewith.



JPMorgan Chase Bank, N.A.

By: _____

Name:  Ekta Rai
Title:   Associate

LSTA EFFECTIVE January 2010  Copyright © LSTA 2010.  All rights reserved.

ASSIGNMENT AND ASSUMPTION

This Assignment and Assumption (the "Assignment and Assumption") is dated as of the Effective Date set forth below and is entered into by and between ███████████ (the "Assignor") and JPMorgan Chase Bank, N.A. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as amended, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including any letters of credit, and guarantees included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

1. ██████         ████████████

2. Assignee:          JPMorgan Chase Bank, N.A.

3. Borrower:          South Edge, LLC

4. Administrative Agent:   JPMorgan Chase Bank, N.A. (F/K/A JPMorgan Chase Bank), as the administrative
                           agent under the Credit Agreement

5. Credit Agreement:   Amended and Restated Credit Agreement dated as of March 9, 2007 among
                       SOUTH EDGE, LLC, a Nevada limited-liability company, the Lenders parties
                       thereto and JPMORGAN CHASE BANK, N.A., as Administrative Agent.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| ██████ | ████████████ | USD 3,350,000.00 | 1.488888889% |

Effective Date:     ████████

---

* Set forth, so at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders under the applicable Facility.

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNOR



ASSIGNEE

JPMORGAN CHASE BANK, N.A., as Assignee

By: _____

Name:    Michael Economos

Title:    Authorized Signatory

823676 - 001

3

Consented to and** Accepted:

**JPMORGAN CHASE BANK, N.A.(F/K/A/ JPMORGAN CHASE BANK), as administrative agent**

By: _____

Name:    Christopher Cestaro
Title:    Authorized Signatory

Consented to:***

**SOUTHEDGE, LLC**

By:    **N/A** _____

Name:

Title:

---

** To be added only if the consent of the Administrative Agent is required by the terms of the Credit Agreement.

*** To be added only if the consent of the Borrower and/or other parties (e.g. Issuing Bank) is required by the terms of the Credit Agreement.

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR
ASSIGNMENT AND ASSUMPTION

1. Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Affiliates or any other Person obligated in respect of any Loan Document or (iv) the performance or observance by the Borrower, any of its Affiliates or any other Person of any of their respective obligations under any Loan Document.

1.2. Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it satisfies the requirements, if any, specified in the Credit Agreement that are required to be satisfied by it in order to acquire the Assigned Interest and become a Lender, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement, together with copies of the most recent financial statements delivered pursuant to Section ___ thereof, as applicable, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest on the basis of which it has made such analysis and decision independently and without reliance on the Administrative Agent or any other Lender, and (v) if it is a Foreign Lender, attached to the Assignment and Assumption is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender.

2. Payments. From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

3. General Provisions. This Assignment and Assumption shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment and Assumption by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Assumption. This Assignment and Assumption shall be governed by, and construed in accordance with, the law of the State of New York.

## Purchase Price Letter

This is the "Purchase Price Letter" referred to in the Purchase and Sale Agreement (the "Agreement") ██████████ ██████████ ("Seller") and JPMorgan Chase Bank, N.A. ("Buyer"). All capitalized terms used but not defined in this Purchase Price Letter shall have the meaning set forth in the Agreement. This Purchase Price Letter confirms that the aggregate amount of the Purchase Price to be remitted by Buyer to Seller, in accordance with the terms of the Agreement, is ████████████ (the "Purchase Price"), calculated as set forth below. The Purchase Price shall be paid by Buyer to Seller by wire transfer of immediately available funds according to the wire instructions set forth below.

**Deal Name:** SouthEdge, LLC (3/97)

| | |
|---|---|
| **Seller:** |  |

| **Buyer:** | **Bank Name:** | JPMorgan Chase Bank, N.A. |
|---|---|---|
| | **Attention:** | Andre Bailey |
| | **Telephone #:** | (302)634-1989 |
| | **Fax #:** | (214)291-4365 |
| | **email:** | andre.e.bailey@jpmchase.com |

### Trade Information:

| | |
|---|---|
| **Trade Date:** | ██████ |
| **T+20 Date:** | |
| **Settlement Date:** | May 11, 2010 |
| **Facility:** | ██████ |
| **Global Commitment:** | USD ██████ |
| **Trade Amount:** | USD 3,360,000.00 |
| **Percentage of Total** | 1.4888888889% |
| **Purchase Rate:** | ██████ |

IN WITNESS WHEREOF, this Purchase Price Letter has been executed by Seller and Buyer as of the date set forth above.

**Seller**



**Buyer**
**JPMORGAN CHASE BANK, N.A.**

By: _____

Name:    Matthew Heidenreich
Title:    Authorized Signatory

**Payment Details:**

Upon satisfaction of the terms and conditions set forth in the Agreement, Buyer will remit to Seller ▮▮▮▮ calculated as follows:

**Agent's Wire Instructions for Transfer Fee:**

| | |
|---|---|
| Bank: | JPMorgan Chase Bank, N.A. |
| ABA #: | |
| Account #: | |
| Account Name: | JPMorgan Loan and Agency Services |
| FFC: | |
| Attention: | |
| Reference: | SouthEdge, LLC (3/07) |
| Reference #: | |

**Contract Information:**

Facility: ▮▮▮▮

| Pricing Option | Cur | Global Amount of Loan | Buyer's Share of Loan | Start Date | Repricing Date | Base Rate | Margin | RAC Rate | All In Rate | Exchange Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| Base | USD | ▮▮▮▮ | 3,360,000.00 | 10-Mar-2008 | | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ | |

**Accrued Interest:**   {Buyer's Share of Loan x All In Rate x Days / Basis}

Facility:

| Pricing Option | Cur | Global Amount of Loan | Buyer's Share of Loan | Start Date | Repricing Date | Days | All In Rate | Basis | Accrued Interest |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Total : | |

823576 - 001

May 11, 2010     12:30:00 pm



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the LSTA as of January 12, 2010 (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through I below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for Distressed Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

### TRANSACTION SUMMARY

| | |
|---|---|
| Trade Date: | ████████ |
| Agreement Date: | ████████ |
| Seller: | ████████ |
| Buyer: | **JPMorgan Chase Bank, N.A.** |
| Credit Agreement: | **Amended and Restated Credit Agreement, dated as of March 9, 2007, among South Edge, LLC, as Borrower, the Lenders party thereto from time to time, JPMorgan Chase Bank, N.A., as administrative agent, and Royal Bank of Scotland PLC, as syndication agent** |
| Borrower: | **South Edge, LLC** |
| Purchase Amount(s): | **$3,350,000.00** |
| Tranche(s): | ████████ |
| CUSIP Number(s), if available: | ████████ |
| Pre-Settlement Date Accruals Treatment: | ████████ |
| Type of Assignment: | ████████ |
| Immediate Prior Seller (if any): | **JPMorgan Chase Bank, N.A.** |
| Borrower in Bankruptcy: | Yes ☐ No ☒ |
| Delivery of Credit Documents: | Yes ☐ No ☒ |
| Netting Arrangements: | Yes ☐ No ☒ |
| Flip Representations: | Yes ☐ No ☒ |
| Step-Up Provisions: | Yes ☐ No ☒ |
| | Shift Date: N/A |
| Transfer Notice | Yes ☐ No ☒ |

LSTA EFFECTIVE JANUARY 12, 2010     Copyright © LSTA 2010. All rights reserved.

DC1 1725547v.1

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means JPMorgan Chase Bank, N.A., as administrative agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☒ none.
☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:

☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:

☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means Facility C Loans in the outstanding principal amount of $3,350,000.00.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $0.00.

**B.**    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

    "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).

████████████████████████████████████████████████

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
☐ not applicable.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
    ☐ the Agent on behalf of the Lenders.
    ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☒ not applicable.

## C.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**    Section 5.1(n) (Buyer Status).  [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.    SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's Indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's Indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.    SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

☐  The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
        ☐  one-half thereof.
        ☐  other relevant fraction or percentage, _____, thereof.
☐  The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☒  The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐  There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

        (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

        (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

JPMorgan Chase Bank, N.A.





**G.**    **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

*Credit Contact:*

JPMorgan Chase Bank, N.A.
383 Madison Avenue, 27th Floor
New York, New York 10017
Mail Code:  NY1-M138
Attention: Jeffrey L. Panzo
Tel: (212) 834-5857

DC1 1725547v.1

6

Fax: (212) 270-4074
Email: Jeffrey.L.Panzo@jpmorgan.com

*Operations Contact:*

JPMorgan Chase Bank, N.A.
500 Stanton Christiana Road
Newark, Delaware 19713
Mail Code: DE3-2720
Attention: Ryan J. Hanks
Tel:  (302) 634-2030
Fax:  (214) 291-4366
E-mail: Ryan.J.Hanks@jpmchase.com; NA_Maintenance@jpmchase.com

**OR**

JPMorgan Chase Bank, N.A.
500 Stanton Christiana Road
Newark, Delaware 19713
Mail Code: DE3-2720
Attention:  Robert A. Jones
Tel:  (302) 634-5588
Fax:  (214) 291-4366
E-mail: Robert.A.Jones@jpmchase.com; NA_Maintenance@jpmchase.com

<u>Seller's Address for Notices and Delivery</u>:



**H.      SECTION 25 (<u>JUDGMENT CURRENCY</u>)**

The exchange rate used for the conversion of amounts in any currency other than the Contractual Currency into amounts in the Contractual Currency shall be determined by reference to quotations from (if no election is made, Seller shall provide the quotations):

DC1 1725547v.1

☐  Seller, or if Seller does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Seller.

☐  Buyer, or if Buyer does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Buyer.

☒  a known dealer in such currency designated by the mutual agreement of the Parties.


I.     **SECTION 27 (ADDITIONAL PROVISIONS)**

None.

DC1 1725547v.1

8

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.



**BUYER**

**JPMORGAN CHASE BANK, N.A.**

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.



**BUYER**

**JPMORGAN CHASE BANK, N.A.**

By: _____

Name:
Title:

Michael Economos
Authorized Signatory

DCI 1725547v.1

9

**ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    A)   To the extent related to $1,000,000.00 principal amount of ▮▮▮▮▮▮▮ assigned hereby:

    Assignment and Assumption dated January 10, 2008 between JPMorgan Chase Bank, N.A., as assignor, and ▮▮▮▮▮▮▮, as assignee. (par/near par)

    B)   To the extent related to $2,350,000.00 principal amount of ▮▮▮▮▮▮▮ assigned hereby:

    Assignment and Assumption dated February 21, 2008 between JPMorgan Chase Bank, N.A., as assignor, and ▮▮▮▮▮▮▮, as assignee. (par/near par)

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None.

3.  Description of Proof of Claim (if any).

    N/A.

4.  Description of Adequate Protection Order (if any).

    N/A.

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    None.

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.00.

Annex-1

**ATTACHMENT TO SCHEDULE A-2**

# LSTA DISTRESSED TRADE CONFIRMATION

**To:**    *JPMorgan Chase Bank, N.A.*



We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of August 6, 2010, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.



| | | |
|---|---|---|
| **Trade Date:** | ███████████ | |
| **Seller:** | ████████████████ | ████████████████ |
| **Buyer:** | JPMorgan Chase Bank, N.A. | ☑ Principal  ☐ Agent |
| **Credit Agreement:** | Amended and Restated Credit Agreement (of the original Credit Agreement dated November 1, 2004) dated March 9, 2007 among South Edge, LLC., The Lenders from time to time party thereto and JPMorgan Chase Bank N.A. as Administrative Agent. | |
| **Borrower:** | SouthEdge, LLC | |
| **Form of Purchase:** | Assignment | |

| Purchase Amount / Type of Debt: | Amount | | Type | | | ████ |
|---|---|---|---|---|---|---|
| | USD | 583,333.33 | Term | | ██████ | ██████ |

883080001

LSTA EFFECTIVE August 6, 2010  Copyright © LSTA 2010.  All rights reserved.

**Purchase Rate:** ████   ████

**Accrued Interest:** ████████████

**Credit Documents**
**to be provided:** No

**Other Terms of Trade:**
    Assignment fee paid by Buyer

**Subject To:** ████████████████████

████████████████████████

████████████████

██████████████



████
████████

JPMorgan Chase Bank, N.A.
MEI: US1L019291

By:

Name:   Trilok Kumar
Title:   Associate

LSTA EFFECTIVE August 6, 2010  Copyright © LSTA 2010.  All rights reserved.

ASSIGNMENT AND ASSUMPTION

    This Assignment and Assumption (the "Assignment and Assumption") is dated as of the Effective Date set forth below and is entered into by and between ███████████████ (the "Assignor") and JPMorgan Chase Bank, N.A. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as amended, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

    For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including any letters of credit, and guarantees included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

1. ██████████            ██████████████

2. Assignee:            JPMorgan Chase Bank, N.A.

3. Borrower:            South Edge, LLC

4. Administrative Agent:  JPMorgan Chase Bank, N.A. (F/K/A JPMorgan Chase Bank), as the administrative agent under the Credit Agreement

5. Credit Agreement:     Amended and Restated Credit Agreement dated as of March 9, 2007 among SOUTH EDGE, LLC, a Nevada limited-liability company, the Lenders parties thereto and JPMORGAN CHASE BANK, N.A., as Administrative Agent.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| ███████ | ████████████ | USD 583,333.33 | 0.259259258% |

Effective Date:  ██████████

---

* Set forth, so at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders under the applicable Facility.

The terms set forth in this Assignment and Assumption are hereby agreed to:



ASSIGNEE

**JPMORGAN CHASE BANK, N.A., as Assignee**

MEI: US1L019291

By: _____

Name:    David Martinez

Title:    Associate

Consented to and** Accepted:

**JPMORGAN CHASE BANK, N.A.(F/K/A/ JPMORGAN CHASE BANK), as administrative agent**

By: _____

Name:    Christopher Cestaro
Title:    Authorized Signatory

Consented to:***

**SOUTHEDGE, LLC**

By:    N/A
    _____

Name:

Title:

---

** To be added only if the consent of the Administrative Agent is required by the terms of the Credit Agreement.

*** To be added only if the consent of the Borrower and/or other parties (e.g. Issuing Bank) is required by the terms of the Credit Agreement.

883080 - 001

4

ANNEX 1

## STANDARD TERMS AND CONDITIONS FOR
## ASSIGNMENT AND ASSUMPTION

1.  Representations and Warranties.

1.1  Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Affiliates or any other Person obligated in respect of any Loan Document or (iv) the performance or observance by the Borrower, any of its Affiliates or any other Person of any of their respective obligations under any Loan Document.

1.2.  Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it satisfies the requirements, if any, specified in the Credit Agreement that are required to be satisfied by it in order to acquire the Assigned Interest and become a Lender, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement, together with copies of the most recent financial statements delivered pursuant to Section ___ thereof, as applicable, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest on the basis of which it has made such analysis and decision independently and without reliance on the Administrative Agent or any other Lender, and (v) if it is a Foreign Lender, attached to the Assignment and Assumption is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender.

2.  Payments.  From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

3.  General Provisions.  This Assignment and Assumption shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment and Assumption by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Assumption.  This Assignment and Assumption shall be governed by, and construed in accordance with, the law of the State of New York.

## Purchase Price Letter

This is the "Purchase Price Letter" referred to in the Purchase and Sale Agreement (the "Agreement") ██████████ ██████████ ("Seller") and JPMorgan Chase Bank, N.A. ("Buyer"). All capitalized terms used but not defined in this Purchase Price Letter shall have the meaning set forth in the Agreement. This Purchase Price Letter confirms that the aggregate amount of the Purchase Price to be remitted by Buyer to Seller, in accordance with the terms of the Agreement, is USD ████████ (the "Purchase Price"), calculated as set forth below. The Purchase Price shall be paid by Buyer to Seller by wire transfer of immediately available funds according to the wire instructions set forth below.

**Deal Name:**    SouthEdge, LLC (3/07)

**Seller:**

**Buyer:**    **Bank Name:**    JPMorgan Chase Bank, N.A.

**Trade Information:**

| | |
|---|---|
| **Settlement Date:** | September 30, 2010 |
| **Facility:** | |
| **Global Commitment:** | |
| **Trade Amount:** | USD   583,333.33 |
| **Percentage of Total** | 0.2592592578% |
| **Purchase Rate:** | |

IN WITNESS WHEREOF, this Purchase Price Letter has been executed by Seller and Buyer as of the date set forth above.

**Buyer:**
**JPMORGAN CHASE BANK, N.A.**
**MEI: US1L019291**

By: _____

Name:    Patrick Kidwell
Title:    Trade Closer

**Payment Details:**

Upon satisfaction of the terms and conditions set forth in the Agreement, Buyer will remit to Seller USD ███████ calculated as follows:

**Agent's Wire Instructions for Transfer Fee:**

| | |
|---|---|
| Bank: | JPMorgan Chase Bank, N.A. |
| Account Name: | JPMorgan Loan and Agency Services |
| FFC: | |
| Attention: | |
| Reference: | SouthEdge, LLC (3/07) |
| Reference #: | |

**Contract Information:**

Facility: ████

| Pricing Option | Cur | Global Amount of Loan | Buyer's Share of Loan | Start Date | Repricing Date | Base Rate | Margin | RAC Rate | All In Rate | Exchange Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| Base | USD | ██████ | 583,333.33 | 10-Mar-2008 | | ███ | ███ | ███ | ████ | |

**Accrued Interest:    {Buyer's Share of Loan x All In Rate x Days / Basis}**

Facility:

| Pricing Option | Cur | Global Amount of Loan | Buyer's Share of Loan | Start Date | Repricing Date | Days | All In Rate | Basis | Accrued Interest |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Total : | |



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

**TRANSACTION SPECIFIC TERMS**

THIS PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the LSTA as of August 6, 2010 (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for Distressed Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

**TRANSACTION SUMMARY**

| | |
|---|---|
| Trade Date: | ████████ |
| Agreement Date: | ████████ |
| Seller: | ████████████ |
| Seller MEI: | ████████ |
| Buyer: | **JPMORGAN CHASE BANK, N.A.** |
| Buyer MEI: | **US1L019291** |
| Credit Agreement: | **Amended and Restated Credit Agreement, dated as of March 9, 2007, among South Edge, LLC, as Borrower, the Lenders party thereto from time to time, JPMorgan Chase Bank, N.A., as administrative agent, and Royal Bank of Scotland PLC, as syndication agent** |
| Borrower: | **South Edge, LLC** |
| Purchase Amount(s): | **$583,333.33** |
| Tranche(s): | ████████████ |
| ████████ | |
| Pre-Settlement Date Accruals Treatment: | ████████████ |
| Type of Assignment: | ████████████ |

| | | | |
|---|---|---|---|
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☐ | No ☒ |
| Flip Representations: | Yes ☐ | No ☒ |
| Step-Up Provisions: | Yes ☐ | No ☒ |

LSTA EFFECTIVE AUGUST 6, 2010          Copyright © LSTA 2010. All rights reserved.

| Transfer Notice | Shift Date: N/A |
|---|---|
| | Yes ☐    No ☒ |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ not applicable.
    ☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
    ☒ not applicable.
    ☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
    ☒ not applicable.
    ☐ none has been set.
    ☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
    ☒ not applicable.
    ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
    ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
    ☒ none.
    ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
    ☒ not applicable.
    ☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and

2

Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:
☒ not applicable.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means ███████████ in the outstanding principal amount of $583,333.33.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" none.

3

**B.** **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(j) (Setoff) | Section 4.1(j)(i) | Section 4.1(j)(i) | Section 4.1(j)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____

4

Section 4.1(v) (Proof of Claim).
    ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
        ☐ the Agent on behalf of the Lenders.
        ☐ Seller or a Prior Seller.
    ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy
Case and no Proof of Claim has been filed.
    ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
    ☒ Not applicable.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

    ☐ Buyer is not a Lender.
    ☒ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the
Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer
represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the
Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's
Indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section
6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's
Indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section
6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

    ☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by
an amount equal to
        ☐ one-half thereof.
        ☐ other relevant fraction or percentage, _____, thereof.
    ☒ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the
Purchase Price equal to
        ☐ one-half thereof.
        ☒ other relevant fraction or percentage, 0%, thereof.
    ☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
    ☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase
Price shall be made in respect thereof.
    ☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in
respect thereof.

**F.    SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

　　　　(i)　　If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

　　　　(ii)　　If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.5 (Wire Instructions).

Buyer's Wire Instructions:

JPMorgan Chase Bank, N.A.



**G.    SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

**GENERAL INFORMATION - DOMESTIC LENDING OFFICE:**
| | |
|---|---|
| Institution Name: | JPMorgan Chase Bank, N.A. |
| Street Address: | 4 NY Plaza, 16th Floor |
| City, State, Zip Code: | New York, N.Y. 10004 |

**CREDIT CONTACT:**
| | |
|---|---|
| Contact: | Jeffrey L. Panzo |
| Email | Jeffrey.L.Panzo@JPMorgan.com |
| Street Address: | 383 Madison Avenue, 37th Floor |
| | Mail Code: NY1-M138 |
| City, State, Zip Code: | New York, NY 10179 |
| Phone Number: | (212) 834-5857 |
| FAX Number: | (212) 270-4074 |

**OPERATIONS CONTACT:**
***CONFIRMATION OF WIRING INSTRUCTIONS***, BORROWINGS, PAYDOWNS, INTEREST, FEES, ETC.

| | |
|---|---|
| Contact: | Ryan J. Hanks |
| Email | Ryan.J.Hanks@jpmchase; NA_Maintenance@jpmchase.com |
| Street Address: | 500 Stanton – Christiana Road |
| City, State, Zip Code: | Newark, DE 19713 |
| Mail Code: | DE3- 2720 |
| Phone Number: | (302) 634-2030 |
| FAX Number: | (214) 291-4366 |

*Or*

| | |
|---|---|
| Contact: | Robert A. Jones |
| Email | Robert.A.Jones@jpmchase.com; NA_Maintenance@jpmchase.com |
| Street Address: | 500 Stanton – Christiana Road |
| City, State, Zip Code: | Newark, DE 19713 |
| Mail Code: | DE3- 2720 |
| Phone Number: | (302) 634-5586 |
| FAX Number: | (214) 291-4366 |

Seller's Address for Notices and Delivery:





**H.     SECTION 27 (ADDITIONAL PROVISIONS)**

None.

7

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BUYER**

**JPMORGAN CHASE BANK, N.A.**

By: _____
    Name:
    Title:

8

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**BUYER**

JPMORGAN CHASE BANK, N.A.

By: _____

Name:
Title:              David A. Martinez
                    Authorized Signatory

8

### ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the Settlement Date, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    N/A

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None.

3.  Description of Proof of Claim (if any).

    N/A

4.  Description of Adequate Protection Order (if any).

    N/A

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    None.

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.00.

## ATTACHMENT TO INVOLUNTARY PETITION FILED AGAINST SOUTH EDGE, LLC

South Edge, LLC ("Debtor") is indebted to Petitioner Wells Fargo Bank, N.A. for not less than $20,540,030 under the (i) Facility A Note and (ii) the Facility C Note, both dated November 1, 2004, and (iii) the Facility D Note, dated March 9, 2007 (collectively, the "Facility Notes"), all of which are between the Debtor and Wachovia Bank National Association (as predecessor to Wells Fargo Bank, N.A.), which were issued pursuant to the Credit Agreement, dated November 1, 2004, among South Edge, LLC, as borrower, J.P. Morgan Chase Bank, N.A., as Administrative Agent, and the Lenders from time to time party thereto (as amended, modified and restated on March 9, 2007, and from time to time thereafter, the "Credit Agreement").

Petitioner herein, Wells Fargo Bank, N.A., is the holder of a claim against the Debtor for principal and interest evidenced by the Facility Notes that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. Petitioner hereby confirms that, taken together, the value of the Petitioner's and the other involuntary petitioners' (collectively, the "Involuntary Petitioners") aggregate interests in the applicable liens on property of the Debtor securing the claims asserted in this Petition is in an amount at least $14,425 less than the principal and interest outstanding under the Involuntary Petitioners' Notes to South Edge issued under the Credit Agreement and referenced in this Petition.

Petitioner's claim herein arises under the Facility Notes and evidences the original Loans by Petitioner under the Credit Agreement. Petitioner does <u>not</u> include in this Petition any other claim, including any claim that has been acquired by Petitioner's secondary loan trading operation. Petitioner's secondary loan trading operation, from time to time, buys and sells positions in the debt of the Debtor arising under the Credit Agreement. Petitioner does not currently hold any claims against the Debtor acquired as part of its secondary loan operations and has <u>not</u> acquired any such claim for the purpose of commencing this involuntary case. Petitioner has checked the Transfer of Claim box on the Petition; however, Petitioner submits that because the claim upon which Petitioner relies was not acquired by Petitioner, checking the box is not required and under the circumstances of this Petition could be misconstrued. Petitioner reserves the right to amend the Petition to cure any alleged technical defect and to supply additional information to the extent required by the Court.

Petitioner has not transferred any claims included in this Petition to the other Involuntary Petitioners.

Petitioner does not waive any rights, interests, remedies or liens it may have.

Wells Fargo Bank, N.A.

By: _____
Name: Scott Holtzapple

Title:    Director – Special Situations Group

ny-951638

## ATTACHMENT TO INVOLUNTARY PETITION FILED AGAINST SOUTH EDGE, LLC

South Edge, LLC ("Debtor") is indebted to Petitioner Credit Agricole Corporate and Investment Bank for not less than $20,269,826 under the (i) Amended and Restated Facility A Note, dated March 9, 2007 (the "Facility A Note") and (ii) Facility C Note, dated November 1, 2004 (the "Facility C Note," collectively with the Facility A Note, the "Facility Notes") both between the Debtor and Calyon New York Branch (n/k/a Credit Agricole Corporate and Investment Bank), which were originally issued pursuant to the Credit Agreement, dated November 1, 2004, among South Edge, LLC, as borrower, J.P. Morgan Chase Bank, N.A., as Administrative Agent, and the Lenders from time to time party thereto. The Facility A Note was amended and restated in accordance with that certain Amended and Restated Credit Agreement, dated March 9, 2007, among South Edge, LLC, as borrower, J.P. Morgan Chase Bank, N.A., as Administrative Agent, and the Lenders from time to time party thereto (as amended, modified and restated from time to time, the "Credit Agreement").

Petitioner herein, Credit Agricole Corporate and Investment Bank, is the holder of a claim against the Debtor for principal and interest evidenced by the Facility Notes that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. Petitioner hereby confirms that, taken together, the value of the Petitioner's and the other involuntary petitioners' (collectively, the "Involuntary Petitioners") aggregate interests in the applicable liens on property of the Debtor securing the claims asserted in this Petition is in an amount at least $14,425 less than the principal and interest outstanding under the Involuntary Petitioners' Notes to South Edge issued under the Credit Agreement and referenced in this Petition.

Petitioner does not waive any rights, interests, remedies or liens it may have.

ny-951638