# EXHIBIT C

## <u>ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS</u>

This **ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS** (this "Assignment Agreement") dated as of November 1, 2004, is entered into by South Edge LLC, a Nevada limited-liability company (the "Borrower"), and each of the Members and Parent Guarantors identified on the signature pages hereto (collectively, the "Member Parties") in favor of JPMorgan Chase Bank, in its capacity as Administrative Agent (the "Administrative Agent") for the Lenders party to the Credit Agreement referred to below, for the benefit of the Holders of Secured Obligations.

## W I T N E S S E T H:

**WHEREAS,** the Borrower, the Administrative Agent and the Lenders are entering into a Credit Agreement of even date herewith (as it may be supplemented, restated, amended or modified from time to time, the "Credit Agreement");

**WHEREAS,** the Borrower and each Member have entered into an Acquisition Agreement, co-signed by such Member's Parent Guarantor, providing for the acquisition by such Member of certain Phases of the Project described therein;

**WHEREAS,** the execution of this Assignment Agreement is a condition precedent to the Lenders' obligations under the Credit Agreement.

NOW, THEREFORE, in consideration of the recitals set forth above and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, the parties hereto hereby agree as follows:

1.    <u>Capitalized Terms</u>.  Capitalized terms not defined herein shall have the meaning ascribed thereto in the Credit Agreement.

2.    <u>Assignment</u>.  As security for the payment and performance of the Secured Obligations, now existing or hereafter arising, the Borrower hereby assigns, transfers, sets over and pledges to the Administrative Agent, and hereby grants to the Administrative Agent a security interest and Lien in, to and against, all of the Borrower's right, title and interest, powers, remedies, privileges and other benefits, whether now owned or hereafter acquired, in, to and under the Acquisition Agreements.

3.    <u>Exercise of Assigned Rights</u>.  (a)  Upon the occurrence and during the continuance of an Event of Default, the Administrative Agent shall have the right (but not the obligation), without notice to or demand on the Borrower, without regard to the adequacy of

security for the Secured Obligations, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court at any time hereafter, (i) to enforce, for its own benefit, the rights and benefits of the Borrower in the Acquisition Agreements, (ii) to institute, appear in and defend any action or proceeding purporting to affect, enforce, adjudicate or determine the rights, powers, duties or obligations of the Borrower under the Acquisition Agreements, (iii) to perform and discharge each and every obligation, covenant, condition and agreement of the Borrower under the Acquisition Agreements, and (iv) in exercising any such powers to incur and pay reasonable costs and expenses, employ counsel, and incur and pay reasonable attorney's fees. All moneys paid by the Administrative Agent for any of the purposes herein authorized and all reasonable expenses paid or incurred in connection therewith, including reasonable attorney's fees and expenses, shall be additional Secured Obligations secured by the Loan Documents, including, without limitation, this Assignment Agreement. The Administrative Agent shall not be obligated to perform or discharge, and does not hereby undertake to perform or discharge, any obligation, duty or liability under any of the Acquisition Agreements by reason of this Assignment Agreement, and the Borrower and Member Parties acknowledge that, by accepting this Assignment Agreement, the Administrative Agent does not assume any of the Borrower's obligations under the Acquisition Agreements, in each case except as otherwise provided in Section 6 below. The exercise of any rights under this Assignment Agreement shall not be deemed to cure or waive any default under any of the Loan Documents, or to waive, modify or affect any notice of default under any of the Loan Documents, or invalidate any act done pursuant to such notice.

(b)     Each Member Party, upon written notice from the Administrative Agent of the occurrence of an Event of Default and during the continuance thereof, shall be and is hereby authorized by the Borrower to perform its obligations under its Acquisition Agreement for the benefit of the Administrative Agent in accordance with the terms and conditions thereof without any obligation to determine whether or not such an Event of Default has in fact occurred.

(c)     Subject to the limitations set forth in this Assignment Agreement and the other Loan Documents, for as long as no Event of Default shall have occurred and be continuing, the Borrower may exercise all of its rights and privileges under the Acquisition Agreements.

4.     Consent and Subordination.     Each of the Member Parties consents to the assignment of the Acquisition Agreements hereunder and agrees, subject to the terms of this Agreement, that its rights, options, remedies, privileges, interests and other benefits arising out of, under or relating to the Acquisition Agreements shall be and hereby are intentionally, irrevocably and unconditionally subject and subordinate to all rights, interests, security interests and liens in favor of the Administrative Agent (for the benefit of the Holders of Secured Obligations) under the other Loan Documents.

5.     Defaults.     (a)     In the event that any Member Party becomes aware that the Borrower has defaulted with respect to any obligation under an Acquisition Agreement, such Member Party agrees that, before exercising any rights or remedies with respect thereto, it shall provide the Administrative Agent with written notice of such default and shall not terminate any Acquisition Agreement except in accordance with its terms, provided that the failure to give any such notice shall not invalidate any such action.

2

(b)    So long as there shall then exist no breach, default (except one that will be cured by the payment of the Takedown Price), or event of default on the part of any Member Party under any of its Guaranties (other than any such breach, default, or event of default that is not material in nature), and provided the conditions to the delivery of a partial release or reconveyance of the applicable Phase under the Credit Agreement are satisfied, the Administrative Agent shall deliver a partial release or reconveyance of such Phase from the Deed of Trust at the time of the Takedown of such Phase by the applicable Member, provided that, if an Event of Default has occurred and is continuing, the Borrower and the applicable Member Parties shall have agreed (if so demanded by the Administrative Agent) to pay, and shall pay, the entire proceeds of such Takedown directly to, or as directed by, the Administrative Agent (subject to any applicable order in any Proceeding) for application, first, to the Release Price and the balance to a Cash Collateral Account as Collateral, first, for the obligations of the Member and its Parent Guarantor to pay Development Costs and, second, for the Secured Obligations.

6.    Attornment; Nondisturbance.  (a)  Each Member Party agrees for the benefit of the Administrative Agent (including for purposes of this paragraph any transferee of title to the Project by exercise of the remedy of sale by foreclosure under the Deed of Trust thereof or otherwise), that, if the Administrative Agent shall acquire title to the Project, then, subject to the provisions of paragraph (d) below:

(i)    Such Member Party shall be bound to the Administrative Agent in accordance with, and to the extent of, the provisions of its Acquisition Agreement;

(ii)    The Administrative Agent shall not be liable for any act or omission of the Borrower under such Acquisition Agreement;

(iii)    The Member Party may offset against the Takedown Price credits and offsets to which it is entitled under its Acquisition Agreement but (except as otherwise provided in paragraph (c) below) in no event shall the net Takedown Price be less than the applicable Release Price; and

(iv)    If the Administrative Agent, by succeeding to the interest of the Borrower under any such Acquisition Agreement, should become obligated to perform the covenants of the Borrower thereunder, then, upon any further transfer of the Borrower's interest in such Acquisition Agreement by the Administrative Agent, all of such obligations shall terminate as to the Administrative Agent to the extent assumed by the transferee in a writing reasonably satisfactory to the Member Party.

(b)    In the event the Administrative Agent shall acquire title to the Project by exercise of the remedy of sale by foreclosure under the Deed of Trust thereof or otherwise, then so long as there shall then exist no breach, default, or event of default on the part of a Member Party under its Acquisition Agreement or any of its Guaranties (other than any such breach, default, or event of default that is not material in nature), the Administrative Agent agrees for itself and its successors and assigns that the interest of such Member Party under such Acquisition Agreement shall not be extinguished or terminated by reason of such foreclosure, but rather such Acquisition Agreement shall, subject to the provisions of paragraph (d) below, continue in full force and effect subject to the terms and provisions thereof.

3

(c)    In the event that the Administrative Agent shall acquire title to the Project by exercise of the remedy of sale by foreclosure under the Deed of Trust thereof or otherwise and a Member Party shall have made any payment of principal of the Loans under its Repayment Guaranty, the amount of such principal shall be applied against the Takedown Price under such Member Party's Acquisition Agreement.

(d)    In the event that the Administrative Agent shall acquire title to the Project by exercise of the remedy of sale by foreclosure under the Deed of Trust thereof or otherwise, the Administrative Agent may at its election at any time thereafter deliver to a Member Party a notice requiring such Member Party to elect, within forty-five days (45) after such notice, either to deliver to Administrative Agent an irrevocable written commitment to purchase, within seventy-five (75) days of Administrative Agent's aforesaid notice, all of the Phases of the Project under such Member Party's Acquisition Agreement (to the extent not yet purchased) or to terminate the Acquisition Agreement.  If such Member Party delivers its irrevocable written commitment to purchase such Phases, the consummation of the purchase of all such Phases shall occur not later than seventy-five (75) days after Administrative Agent's aforesaid notice to such Member Party on the terms set forth in such Acquisition Agreement (except for the timing of the closing).  If such Member Party does not deliver its irrevocable written commitment within such forty-five (45) day period, the Acquisition Agreement shall terminate and neither Administrative Agent, any Lender, any other Holder of Secured Obligations nor such Member Party shall have any further obligations thereunder.

7.    <u>Proceeds</u>.  The Borrower acknowledges and agrees, and the Member Parties acknowledge, that any and all revenues, rents, profits, proceeds, adjustments, principal, interest, fees or other sums or amounts (i) derived or generated from the ownership, operation, occupancy, leasing, licensing, development, sale or other disposition of the Project or other Collateral (whether now owned or hereafter acquired) by the Borrower or (ii) due or payable to the Borrower under the Acquisition Agreements (collectively herein called "Proceeds") are subject to a security interest and Lien of the Administrative Agent, for the benefit of the Holders of Secured Obligations, and shall, to the extent provided in the Loan Documents, be collected and held by the Borrower in trust for the benefit of the Administrative Agent.  The Borrower agrees that any such Proceeds shall be applied, deposited and/or transferred in accordance with the Credit Agreement.  Upon written notice from the Administrative Agent that (a) an Event of Default has occurred under the Credit Agreement or any of the other Loan Documents, and (b) as a result of such Event of Default, the Administrative Agent has revoked the Borrower's license to receive or collect the Proceeds pursuant to the terms of the Loan Documents, each Member Party agrees not to remit to the Borrower, without the prior written approval of the Administrative Agent, any payments provided to be paid by such Member Party under its Acquisition Agreement and, further, agrees, except as otherwise required by an order of a court in a Proceeding, to remit and pay when and to the extent due such payments pursuant to the Administrative Agent's written or electronic instructions and to follow the Administrative Agent's written or electronic instructions with respect to the remittance, application, transfer and disbursement of any such payments owed by or on behalf of such Member Party under its Acquisition Agreement, subject to the Member's right to terminate such Acquisition Agreement in accordance with the terms thereof.

8.      Amendment to Acquisition Agreement.  Each Member Party agrees not to amend, modify, supplement or, except in accordance with the terms of its Acquisition Agreement, terminate its Acquisition Agreement without the Administrative Agent's prior written approval, which approval shall not be unreasonably withheld in the case of any amendment, modification or supplement but may be withheld in the Administrative Agent's sole discretion in the case of termination.

9.      Borrower Representations and Warranties.  The Borrower represents and warrants as of the date hereof, and covenants, that (a) neither the Borrower nor any Member Party is in default under any of the terms, covenants, provisions or obligations of any of the Acquisition Agreements, (b) it has not commenced any action or given any notice for the purpose of terminating any of the Acquisition Agreements and will not hereafter do so (except as permitted by the provisions of Section 9.07 of the Credit Agreement), (c) it has not sold, assigned, transferred, mortgaged, pledged or otherwise hypothecated any right or interest in any of the Assignment Agreements (other than pursuant to the Loan Documents) and will not hereafter do so, (d) it has not taken and will not take any action that would impair the pledges, Liens, security interests and other rights and remedies created under the Credit Agreement, this Assignment Agreement or the other Loan Documents, and (e) all approvals and consents required for the Borrower to execute and deliver this Assignment Agreement have been obtained and this Assignment Agreement constitutes the valid and binding agreement of the Borrower enforceable against the Borrower in accordance with its terms.

10.     Member Parties Representations and Warranties.  Each Member Party represents and warrants as of the date hereof that (a) neither it nor the Borrower is in default under any of the terms, covenants, provisions or obligations of the Acquisition Agreement with such Member Party, (b) it has not commenced any action or given any notice for the purpose of terminating such Acquisition Agreement, and (c) with respect to its execution of this Assignment Agreement, all approvals and consents required for the execution and delivery of this Assignment Agreement have been obtained and this Assignment Agreement constitutes the valid and binding agreement of such Member Party, enforceable in accordance with its terms.

11.     No Obligation of Administrative Agent; Borrower Remains Liable.  Nothing contained herein shall operate or be construed to obligate the Administrative Agent or any Holder of Secured Obligations to perform any of the terms, covenants, or conditions contained in the Acquisition Agreements or otherwise to impose any obligation upon the Administrative Agent or any Holder of Secured Obligations with respect to the Acquisition Agreements except as provided herein.  Notwithstanding anything herein to the contrary:

        (a)     The Borrower shall remain liable in respect of the Acquisition Agreements to the extent set forth therein to perform and satisfy all of its duties and obligations thereunder to the same extent as if this Assignment Agreement had not been executed; and

        (b)     The Administrative Agent's exercise of any rights or remedies hereunder shall not release the Borrower from any of its duties, obligations or liabilities under the Acquisition Agreements.

12.    Further Assurances.    The Borrower shall, from time to time upon the Administrative Agent's written request, promptly execute and deliver such further documents and take such further action as the Administrative Agent may reasonably request in order to create, preserve, perfect, protect or confirm the assignment granted hereby or to enable the Administrative Agent to exercise and enforce its rights and remedies hereunder. All of the foregoing shall be undertaken at the Borrower's expense, including, without limitation: (a) all filing, registration and recording fees, if any; and (b) all stamp taxes and other taxes, charges and similar impositions in connection therewith.

13.    Attorney-in-Fact.    The Administrative Agent is hereby appointed the Borrower's attorney-in-fact (which appointment is coupled with an interest and is irrevocable) for the purpose of carrying out the provisions of this Assignment Agreement and taking any action and executing any instruments which the Administrative Agent may deem reasonably necessary or desirable to effect the intents and purposes hereof including, without limitation, the right to file any financing statement (or amendment or extension thereof) deemed necessary by the Administrative Agent in connection herewith and the right to transfer any of the Acquisition Agreements.

14.    Security Agreement.

(a)    This Assignment Agreement shall also constitute a security agreement as that term is used in the UCC (as hereinafter defined) by the Borrower as debtor. The Administrative Agent shall have, in addition to all other rights and remedies provided herein or in any other Loan Document, in law, at equity or otherwise, all rights and remedies of a secured party under the UCC.

(b)    Prior to or concurrently with the execution and delivery of this Assignment Agreement, the Borrower shall file such financing statements and other documents in such offices as the Administrative Agent may request to perfect the security interests granted by Borrower in this Assignment Agreement. The Administrative Agent is hereby irrevocably authorized by the Borrower at any time and from time to time to file in any filing office in any jurisdiction any initial financing statements and amendments thereto that may indicate the Acquisition Agreements and other collateral in which a security interest in favor of the Administrative Agent is granted hereunder, and additionally may indicate all assets of the Borrower or words of similar effect, in each case regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the Uniform Commercial Code (the "UCC"), or may be of an equal or lesser scope than the foregoing, or with greater detail, and may contain any other information required or in the Administrative Agent's determination advisable under Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment. The Borrower shall furnish any such information to the Administrative Agent promptly upon request.

15.    Indemnity.    The Borrower hereby agrees to indemnify and hold the Indemnitees free and harmless from and against any and all liability, expense, cost, loss or actual damage which any of them may incur under any of the Acquisition Agreements or under or by reason of this Assignment Agreement and of and from any and all claims and demands whatsoever which may be asserted against any of them by reason of any alleged obligations or undertakings on its

part to perform or discharge any of the terms, covenants or agreements contained in any of the Acquisition Agreements. Should any Indemnitee incur any liability, expense, cost, loss or damage (a) under the Acquisition Agreements (for which it is to be indemnified by the Borrower as aforesaid), or (b) by reason of the exercise of the Administrative Agent's rights hereunder (including, but not limited to, the exercise of the rights granted to the Administrative Agent under Section 3 hereof), the amount thereof, including reasonable costs, expenses and attorney's fees and expenses, shall be secured hereby and by all of the other Loan Documents (whether or not such amount, when aggregated with other sums secured by the Loan Documents, exceeds the maximum aggregate principal amount of the Facilities) and (i) shall be due and payable by the Borrower immediately upon demand by the Administrative Agent, and (ii) shall bear interest thereon commencing on the day following the demand therefor at the rate provided in Section 2.13(c)(iii) of the Credit Agreement. The provisions of this Section 15 shall be obligations of the Borrower and not of the Member Parties.

16.    <u>Termination</u>. The Administrative Agent, by the acceptance of this Assignment Agreement, agrees that when all Secured Obligations have been fully and indefeasibly paid, performed and discharged and the Letters of Credit and Commitments have terminated or expired, this Assignment Agreement shall terminate, and the Administrative Agent shall execute and deliver to the Borrower upon such termination such instruments of re-assignment, all without recourse and without any representation or warranty whatsoever, as shall be reasonably requested by the Borrower.

17.    <u>Expenses</u>. If the Administrative Agent institutes any suit or other proceeding to enforce this Assignment Agreement or any portion hereof, the Borrower shall pay, upon demand, all of the Administrative Agent's reasonable out-of-pocket costs and expenses (including, without limitation, the Administrative Agent's reasonable attorneys' fees and disbursements) in connection therewith. The obligations of the Borrower under this Section shall survive any expiration or termination of this Assignment Agreement.

18.    <u>Miscellaneous</u>.

(a)    <u>No Waiver</u>. No failure on the Administrative Agent's part, or by any of its agents, to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by the Administrative Agent or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies herein are cumulative and are not exclusive of any remedies provided by law.

(b)    <u>Governing Law, Etc</u>. THIS ASSIGNMENT AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK. THE BORROWER AND EACH MEMBER PARTY CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK. SERVICE OF PROCESS BY THE ADMINISTRATIVE AGENT IN CONNECTION WITH ANY SUCH DISPUTE SHALL BE BINDING ON THE BORROWER OR MEMBER PARTY IF SENT TO IT BY REGISTERED MAIL AT ITS ADDRESS SPECIFIED IN THE CREDIT AGREEMENT OR AS OTHERWISE

**SPECIFIED BY THE BORROWER OR SUCH MEMBER PARTY FROM TIME TO TIME. THE BORROWER AND EACH MEMBER PARTY WAIVES ANY RIGHT IT MAY HAVE TO JURY TRIAL IN ANY ACTION RELATED TO THIS ASSIGNMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THE BORROWER FURTHER WAIVES ANY RIGHT TO INTERPOSE ANY COUNTERCLAIM RELATED TO THIS ASSIGNMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY IN ANY SUCH ACTION. TO THE EXTENT THAT THE BORROWER OR SUCH MEMBER PARTY HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER FROM SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF A JUDGMENT, EXECUTION OR OTHERWISE), IT HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS ASSIGNMENT AGREEMENT.**

(c)    Severability.  If any provision hereof is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by law:  (i) the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be construed in order to carry out the intentions of the parties hereto as nearly as may be possible, and (ii) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

(d)    Remedies Cumulative.  All rights and remedies set forth in this Assignment Agreement are cumulative, and the Administrative Agent may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby.  No such right or remedy set forth in this Assignment Agreement shall be deemed exclusive of any of the remedies or rights granted to the Administrative Agent and the Lenders in the Loan Documents.  Nothing contained in this Assignment Agreement shall be deemed to limit or restrict the rights and remedies of the Administrative Agent or any other Lenders under any of the other Loan Documents.

(e)    Amendments and Waivers.  This Assignment Agreement may not be amended, waived or discharged except by an instrument in writing duly executed by the party or parties affected hereby and by the Administrative Agent.  The Administrative Agent may, however, elect to waive any of its rights hereunder from time to time without permanently waiving any such right by virtue of any single such waiver or being obligated so to waive such right (or any other right) in any future similar or dissimilar circumstances.

(f)    Successors and Assigns.  This Assignment Agreement shall be binding upon the Borrower, and shall inure to the benefit of the parties hereto and their respective successors and assigns and each Holder of Secured Obligations.

(g)    Notices.  All notices, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Credit Agreement.

(h)    <u>Section Headings</u>.  The section headings used in this Assignment Agreement are for convenience of reference only and do not constitute a part of this Assignment Agreement for any purpose.

(i)    <u>Counterparts</u>.  This Assignment Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and either of the parties hereto may execute this Assignment Agreement by signing any such counterpart.

(j)    <u>Time of Essence</u>.  Time is of the essence of this Assignment Agreement and of each and every term, covenant and condition herein.

(k)    <u>Definitions</u>.  Definitions contained in this Assignment Agreement which identify documents, including the other Loan Documents, shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments and supplements thereto entered into from time to time.  Reference to this Assignment Agreement contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Assignment Agreement.

[SIGNATURE PAGES FOLLOW]

**SIGNATURE PAGE TO ASSUMPTION OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

**IN WITNESS WHEREOF,** Borrower and Member Parties have executed and delivered this Assignment Agreement under seal as of the day and year first written above.

**BORROWER:**

SOUTH EDGE, LLC, a Nevada limited-liability company

By:  Holdings Manager, LLC, a Nevada limited-liability company, its general manager

By: _____
John A. Ritter
General Manager

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

KB HOME NEVADA INC., a Nevada corporation

By: _____
James Widner, President

By: _____
Donald F. DelGiorno, Executive Vice President

KB HOME, a Delaware corporation

By: _____
William R. Hollinger, Senior Vice President and Controller

By: _____
Kelly M. Allred, Vice President, Treasury and Risk Management

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

KB HOME NEVADA INC., a Nevada corporation

By: _____
     James Widner, President

By: _____
     Donald J. DelGiorno, Executive Vice
     President

KB HOME, a Delaware corporation

By: _____
     William R. Hollinger, Senior Vice President
     and Controller

By: _____
     Kelly M. Allred, Vice President, Treasury
     and Risk Management

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO
ACQUISITION AGREEMENTS**

FOCUS SOUTH GROUP LLC, a Nevada limited
company

By: Holdings Manager, LLC, a Nevada limited
     liability company, its general manager

By: _____
     John A. Ritter, General Manager

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

PARDEE HOMES OF NEVADA, a Nevada corporation

By: _____
Name: _W. A. Bryan, Sr. Vice President_
Title: _____

WEYERHAEUSER REAL ESTATE COMPANY, a Washington corporation

By: _____
Name: _____
Title: _____

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

PARDEE HOMES OF NEVADA, a Nevada corporation


By: _____
Name: _____
Title: _____


WEYERHAEUSER REAL ESTATE COMPANY, a Washington corporation

By: _____
Name: _____JEFFREY W. NITTA_____
     Vice President/Treasurer
Title: _____

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

ALAMEDA INVESTMENTS, LLC, a Delaware limited liability company

By: _____
      Scott "Chip" Nelson, Manager

WOODSIDE GROUP, INC., a Nevada corporation

By: _____
      Scott "Chip" Nelson, President

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

MTH-HOMES NEVADA, INC., an Arizona corporation

By: _____
Name: Robert M. Beville, its Chief Operating
      Officer


MERITAGE HOMES CORPORATION, a Maryland corporation


By: _____
Name: Larry W. Seay, its Chief Financial Officer

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

MTH-HOMES NEVADA, INC., an Arizona corporation

By: _____
Name:  Robert M. Beville, its Chief Operating
        Officer

MERITAGE HOMES CORPORATION, a Maryland corporation

By: _____
Name: Larry W. Seay, its Chief Financial Officer

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

KIMBALL HILL HOMES NEVADA, INC.,
a Nevada corporation

By: _____

David K. Hill, CEO and Chairman of
the Board


KIMBALL HILL INC., an Illinois corporation

By: _____

David K. Hill, CEO and Chairman of
the Board

**SIGNATURE PAGE TO ASSIGNMENT OF AND AGREEMENT WITH RESPECT TO ACQUISITION AGREEMENTS**

BEAZER HOMES HOLDING CORP., a
Delaware corporation

By: _____
      Cory J. Boydston
      Senior Vice President & Treasurer


BEAZER HOMES USA, INC., a Delaware
corporation

By: _____
      Cory J. Boydston
      Senior Vice President & Treasurer