# EXHIBIT L

# ASSIGNMENT OF ACQUISITION AGREEMENT

This **ASSIGNMENT OF ACQUISITION AGREEMENT** (this "Assignment") dated as of April 27, 2006, is entered into by South Edge LLC, a Nevada limited-liability company (the "Borrower") in favor of JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent (the "Administrative Agent") for the Lenders party to the Credit Agreement referred to below, for the benefit of the Holders of Secured Obligations.

## W I T N E S S E T H:

**WHEREAS,** the Borrower, the Administrative Agent and the Lenders have entered into a Credit Agreement dated November 1, 2004 (as it may be supplemented, restated, amended or modified from time to time, the "Credit Agreement");

**WHEREAS,** the Borrower and the City of Henderson, Nevada (the "City") have entered into a certain Acquisition Agreement dated as of April 1, 2006 (as it may be supplemented, restated, amended or modified from time to time, the "Acquisition Agreement"); and

**WHEREAS**, subject to the terms and conditions herein contained, the Borrower has agreed to assign to the Administrative Agent the rights of the Borrower under the Acquisition Agreement, including without limitation the rights to receive payments from time to time of the Purchase Price (as defined in the Acquisition Agreement) payable to Borrower thereunder;

NOW, THEREFORE, in consideration of the recitals set forth above and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, the parties hereto hereby agree as follows:

1.      Capitalized Terms.  Capitalized terms not defined herein shall have the meanings ascribed thereto in the Credit Agreement.

2.      Assignment.   As security for the payment and performance of the Secured Obligations, now existing or hereafter arising, the Borrower hereby assigns, transfers, sets over and pledges to the Administrative Agent, and hereby grants to the Administrative Agent a security interest and Lien in, to and against, all of the Borrower's right, title and interest, under the Acquisition Agreement, including the Purchase Price from time to time payable thereunder.

3.      Exercise of Assigned Rights.

(a)      Upon the occurrence and during the continuance of an Event of Default, the Administrative Agent shall have the right (but not the obligation), without notice to or demand on the Borrower, without regard to the adequacy of security for the Secured Obligations, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court at any time hereafter, (i) to enforce the Acquisition Agreement and (ii) to receive from time to time the Purchase Price payable thereunder.  The Administrative Agent

shall not be obligated to perform or discharge, and does not hereby undertake to perform or discharge, any obligation, duty or liability under the Acquisition Agreement by reason of this Assignment, and the Borrower acknowledges that, by accepting this Assignment, the Administrative Agent does not assume any of the Borrower's obligations under the Acquisition Agreement. The exercise of any rights under this Assignment shall not be deemed to cure or waive any default under any of the Loan Documents, or to waive, modify or affect any notice of default under any of the Loan Documents, or invalidate any act done pursuant to such notice.

(b)    The City, upon written notice from the Administrative Agent of the occurrence of an Event of Default and during the continuance thereof, shall be and is hereby authorized by the Borrower to direct the Trustee (as defined in the Acquisition Agreement) to pay to the Administrative Agent from the Acquisition Fund (as defined in the Acquisition Agreement) the Purchase Price from time to time payable under the Acquisition Agreement, all subject to the terms and conditions set forth in the Acquisition Agreement, without any obligation to determine whether or not such an Event of Default has in fact occurred. The Borrower hereby acknowledges, for the benefit of the City, that the City is authorized to rely upon any such notice.

(c)    Subject to the limitations set forth in this Assignment and the other Loan Documents, for as long as no Event of Default shall have occurred and be continuing, the Borrower may exercise all of its rights and privileges under the Acquisition Agreement and receive the Purchase Price from time to time payable thereunder.

4.    Borrower Representations and Warranties.  The Borrower represents, warrants and covenants that (a) neither the Borrower nor, to the Borrower's actual knowledge, the City is in default under any of the terms, covenants, provisions or obligations of the Acquisition Agreement, (b) it has not commenced any action or given any notice for the purpose of terminating the Acquisition Agreement and will not hereafter do so without the prior consent of the Administrative Agent, which consent shall not be unreasonably withheld or delayed, (c) except as set forth herein and the other Loan Documents, it has not sold, assigned, transferred, mortgaged, pledged or otherwise hypothecated any right or interest in the Acquisition Agreement and will not hereafter do so, (d) it has not taken and will not take any action that would impair the pledges, Liens, security interests and other rights and remedies created under the Credit Agreement, this Assignment or the other Loan Documents, and (e) except as otherwise provided in Section 13 hereof, all approvals and consents required for the Borrower to execute and deliver this Assignment have been obtained and this Assignment constitutes the valid and binding agreement of the Borrower enforceable against the Borrower in accordance with its terms.

5.    No Obligation of Administrative Agent; Borrower Remains Liable.  Nothing contained herein shall obligate or be construed to obligate the Administrative Agent or any Holder of Secured Obligations to perform any of the terms, covenants, or conditions contained in the Acquisition Agreement or otherwise to impose any obligation upon the Administrative Agent or any Lender or other Holder of Secured Obligations with respect to the Acquisition Agreement. In the exercise of the powers herein granted to the Administrative Agent, no liability shall be asserted or enforced against the Administrative Agent or any Lender or other Holder of Secured Obligations, all such liability being hereby expressly waived and released by the Borrower,

except to the extent based on or arising from the gross negligence or willful misconduct of such party. Notwithstanding anything herein to the contrary:

        (a)     The Borrower shall remain liable in respect of the Acquisition Agreement to the extent set forth therein to perform and satisfy all of its duties and obligations thereunder to the same extent as if this Assignment had not been executed; and

        (b)     The Administrative Agent's exercise of any rights or remedies hereunder shall not release the Borrower from any of its duties, obligations or liabilities under the Acquisition Agreement.

      6.     Further Assurances.    The Borrower shall, from time to time upon the Administrative Agent's written request, promptly execute and deliver such further documents and take such further action as the Administrative Agent may reasonably request in order to create, preserve, perfect, protect or confirm the assignment granted hereby or to enable the Administrative Agent to exercise and enforce its rights and remedies hereunder. All of the foregoing shall be undertaken at the Borrower's expense, including, without limitation: (a) all filing, registration and recording fees, if any; and (b) all stamp taxes and other taxes, charges and similar impositions in connection therewith.

      7.     Attorney-in-Fact.    Effective upon and during the continuance of an Event of Default, the Administrative Agent is hereby appointed the Borrower's attorney-in-fact (which appointment is coupled with an interest and is irrevocable) for the purpose of carrying out the provisions of this Assignment and taking any action and executing any instruments which the Administrative Agent may deem reasonably necessary or desirable to effect the intents and purposes hereof including, without limitation, the right to file any financing statement (or amendment or extension thereof) deemed necessary by the Administrative Agent in connection herewith and the right to assign the Acquisition Agreement (subject to the consent of the City).

      8.     Security Agreement.

        (a)     This Assignment shall also constitute a security agreement as that term is used in the UCC (as hereinafter defined). The Administrative Agent shall have, in addition to all other rights and remedies provided herein or in any other Loan Document, in law, at equity or otherwise, all rights and remedies of a secured party under the UCC.

        (b)     Prior to or concurrently with the execution and delivery of this Assignment, there shall be filed such financing statements and other documents in such offices as the Administrative Agent may request to perfect the security interests granted by this Assignment. The Administrative Agent is hereby irrevocably authorized at any time and from time to time to file in any filing office in any jurisdiction any initial financing statements and amendments thereto that may indicate the Contracts and other collateral in which a security interest in favor of the Administrative Agent is granted hereunder, and additionally may indicate all assets of the Borrower or words of similar effect, in each case regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the Uniform Commercial Code (the "UCC"), or may be of an equal or lesser scope than the foregoing, or with greater detail, and may contain any other information required or in the Administrative Agent's

determination advisable under Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment. The Borrower shall furnish any such information to the Administrative Agent promptly upon request.

9. Indemnity. The Borrower hereby agrees to indemnify and hold the Indemnitees free and harmless from and against any and all liability, expense, cost, loss or actual damage which any of them may incur under Acquisition Agreement or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against any of them by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in Acquisition Agreement except to the extent relating to or arising from the gross negligence or willful misconduct of the Indemnitee seeking indemnification. Should any Indemnitee incur any liability, expense, cost, loss or damage (a) under the Acquisition Agreement (for which it is to be indemnified by the Borrower as aforesaid), or (b) by reason of the exercise of the Administrative Agent's rights hereunder (including, but not limited to, the exercise of the rights granted to the Administrative Agent under Section 3 hereof), the amount thereof, including reasonable costs, expenses and attorney's fees and expenses, shall be secured hereby and by all of the other Loan Documents (whether or not such amount, when aggregated with other sums secured by the Loan Documents, exceeds the maximum aggregate principal amount of the Facilities) and (i) shall be due and payable within ten (10) days of written demand by the Administrative Agent, and (ii) shall bear interest thereon commencing on the day following the demand therefor at the rate provided in Section 2.13(c)(iii) of the Credit Agreement.

10. Termination. The Administrative Agent, by the acceptance of this Assignment, agrees that when all Secured Obligations have been fully and indefeasibly paid, performed and discharged and the Letters of Credit and Commitments have terminated or expired, this Assignment shall terminate, and the Administrative Agent shall execute and deliver to the Borrower upon such termination such instruments of re-assignment, all without recourse and without any representation or warranty whatsoever, as shall be reasonably requested by the Borrower.

11. Expenses. If the Administrative Agent institutes any suit or other proceeding to enforce this Assignment or any portion hereof, the Borrower shall pay, upon demand, all of the Administrative Agent's reasonable out-of-pocket costs and expenses (including, without limitation, the Administrative Agent's reasonable attorneys' fees and disbursements) in connection therewith. The obligations of the Borrower under this Section shall survive any expiration or termination of this Assignment.

12. Reinstatement. This Assignment and the security interest created hereunder shall automatically be reinstated if and to the extent that for any reason any payment by or on behalf of the Borrower in respect of the Secured Obligations is rescinded or must otherwise be restored by any Holder of Secured Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise. The Borrower hereby indemnifies the Administrative Agent and the Holders of Secured Obligations for all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by them in connection with such rescission or reinstatement.

13.    City Consent. Unless and until the City shall consent to this Agreement, this Assignment shall be enforceable only to the extent that the same would not violate the terms of the Acquisition Agreement. The Borrower shall request the City to execute and deliver to the Administrative Agent a consent in the form attached hereto as Exhibit A.

14.    Miscellaneous.

(a)    No Waiver. No failure on the Administrative Agent's part, or by any of its agents, to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by the Administrative Agent or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies herein are cumulative and are not exclusive of any remedies provided by law.

(b)    **Governing Law, Etc. THIS ASSIGNMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK. THE BORROWER CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK. SERVICE OF PROCESS BY THE ADMINISTRATIVE AGENT IN CONNECTION WITH ANY SUCH DISPUTE SHALL BE BINDING ON THE BORROWER IF SENT TO IT BY REGISTERED MAIL AT ITS ADDRESS SPECIFIED IN THE CREDIT AGREEMENT OR AS OTHERWISE SPECIFIED BY THE BORROWER FROM TIME TO TIME. THE BORROWER WAIVES ANY RIGHT IT MAY HAVE TO JURY TRIAL IN ANY ACTION RELATED TO THIS ASSIGNMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY AND FURTHER WAIVES ANY RIGHT TO INTERPOSE ANY COUNTERCLAIM RELATED TO THIS ASSIGNMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY IN ANY SUCH ACTION. TO THE EXTENT THAT THE BORROWER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER FROM SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF A JUDGMENT, EXECUTION OR OTHERWISE), IT HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS ASSIGNMENT.**

(c)    Severability. If any provision hereof is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by law: (i) the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be liberally construed in favor of the Administrative Agent in order to carry out the intentions of the parties hereto as nearly as may be possible, and (ii) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

(d)    Remedies Cumulative. All rights and remedies set forth in this Assignment are cumulative, and the Administrative Agent may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby. No such right or remedy set forth in this Assignment shall be deemed exclusive of any

5

of the remedies or rights granted to the Administrative Agent and the Lenders in the Loan Documents. Nothing contained in this Assignment shall be deemed to limit or restrict the rights and remedies of the Administrative Agent or any other Lenders under any of the other Loan Documents.

(e)     Amendments and Waivers.   This Assignment may not be amended, waived or discharged except by an instrument in writing duly executed by the party or parties affected hereby and by the Administrative Agent. The Administrative Agent may, however, elect to waive any of its rights hereunder from time to time without permanently waiving any such right by virtue of any single such waiver or being obligated so to waive such right (or any other right) in any future similar or dissimilar circumstances.

(f)     Successors and Assigns.   This Assignment shall be binding upon the Borrower, and shall inure to the benefit of the parties hereto and their respective successors and assigns and each Holder of Secured Obligations.

(g)     Notices.   All notices, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Credit Agreement.

(h)     Section Headings.   The section headings used in this Assignment are for convenience of reference only and do not constitute a part of this Assignment for any purpose.

(i)     Counterparts.   This Assignment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and either of the parties hereto may execute this Assignment by signing any such counterpart.

(j)     Time of Essence.   Time is of the essence of this Assignment and of each and every term, covenant and condition herein.

(k)     Definitions.   Definitions contained in this Assignment which identify documents, including the other Loan Documents, shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments and supplements thereto entered into from time to time. Reference to this Assignment contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Assignment.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Borrower has executed and delivered this Assignment under seal as of the day and year first written above.

**BORROWER:**

SOUTH EDGE, LLC

By:  Holdings Manager, LLC, its general manager

By:  _____
    John A. Ritter
    General Manager

EXHIBIT A

CONSENT OF

THE CITY OF HENDERSON, NEVADA

The City of Henderson, Nevada (the "City"), hereby consents to the Assignment of Acquisition Agreement, dated as of April 27, 2006 (the "Assignment"), by South Edge, LLC ("South Edge") to JPMorgan Chase Bank, N.A. (the "Administrative Agent") assigning South Edge's interest under the Acquisition Agreement, dated as of April 1, 2006 (the "Acquisition Agreement"), by and between the City and South Edge, pursuant to the terms of the Assignment. Notwithstanding anything herein, in the Assignment or in the Acquisition Agreement to the contrary:

(a)     The assignment by South Edge of its interest under the Acquisition Agreement shall not relieve, excuse or otherwise waive any condition precedent to the obligations of the City under the Acquisition Agreement, including, without limitation, conditions for the payment of Segments;

(b)     The City agrees that, upon receipt of notice (a "Default Notice") from Administrative Agent stating that an Event of Default (as defined in the Credit Agreement, dated as of November 1, 2004, among South Edge, the Administrative Agent and the Lenders party thereto (as it may be supplemented, restated or modified from time to time, the "Credit Agreement")) has occurred, the City will direct the Trustee to pay to the Administrative Agent from the Acquisition Fund the Purchase Price from time to time payable under the Acquisition Agreement, all subject to the terms and conditions set forth in the Acquisition Agreement;

(c)     The Administrative Agent shall not be entitled to apply for and receive payment under the Acquisition Agreement without satisfying or causing to be satisfied in full all conditions precedent to such payment, including, without limitation, the applicable conditions set forth in Articles III and IV of the Acquisition Agreement;

(d)     From and after the delivery of a Default Notice, the City will accept performance by Administrative Agent of the obligations of South Edge under the Acquisition Agreement with respect to work performed for which the Administrative Agent or other lenders under the Credit Agreement have advanced funds to or for the benefit of South Edge;

(e)     Except as otherwise set forth in paragraph (d) above, the City shall not be required to accept performance under the Acquisition Agreement by Administrative Agent or any designee of the Administrative Agent that shall acquire the Property by foreclosure or deed in lieu of foreclosure (the Administrative Agent or designee that so acquires the Property being herein referred to as the "Successor Owner") unless and until such Successor Owner agrees in writing to comply in full with all of South Edge's obligations under the Acquisition Agreement with respect to work not theretofore performed, including, without limitation, obtaining insurance in accordance with Section 4.1 of the

8

Acquisition Agreement and indemnifying the City in accordance with Section 5.2 of the Acquisition Agreement against all actions, damages, claims, losses or expenses resulting from work carried out or caused to be carried out by such Successor Owner;

(f)     The City expressly acknowledges and agrees that, by accepting the Assignment or by exercising any of its rights under the Assignment, Administrative Agent assumes no obligations or liabilities of South Edge under the Acquisition Agreement except to the extent that the Administrative Agent hereafter so agrees in writing as provided in the foregoing paragraphs; and

(g)     The City expressly acknowledges and agrees that Administrative Agent shall have no obligation to the City to exercise its rights under the foregoing Assignment or to declare a Default or Event of Default under the Credit Agreement or other Loan Documents (as defined in the Credit Agreement), but that the right and option to exercise such rights or declare a Default or Event of Default rests in the sole and absolute discretion of Administrative Agent.

For purposes of the Assignment, all notices, demands or documents which are required or permitted to be given or served upon the City shall be given as provided in the Acquisition Agreement.

Capitalized undefined terms used herein shall have the meanings ascribed thereto in the Acquisition Agreement.

Dated: May 24 , 2006

CITY OF HENDERSON, NEVADA

By: _____

ATTEST:

Monica M. Simmons, CMC, City Clerk

9