# EXHIBIT M

J.P.Morgan

John McDonagh
Managing Director

November 23, 2010

**Via Overnight Mail**

City of Henderson, Nevada
240 Water Street
Henderson, Nevada 89015
Attention: City Manager

Re: Acquisition Agreement by and between City of Henderson, Nevada and South Edge, LLC, dated as of April 1, 2006 (the "Acquisition Agreement"), and Assignment of Acquisition Agreement by and between South Edge, LLC and JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent for the Lenders party to the Credit Agreement, dated as of April 27, 2006 (the "Assignment of Acquisition Agreement")

Dear City Manager:

Reference is made to the Acquisition Agreement and the Assignment of Acquisition Agreement. Terms defined in the Acquisition Agreement and used, but not otherwise defined, herein have the meanings ascribed to such terms in the Acquisition Agreement.

Please be advised that there have been, and continue to be, numerous Events of Default under the Credit Agreement, as set forth in greater detail in the November 23, 2010 Notice of Default issued to South Edge (a copy of which is included herewith). Accordingly, pursuant to Section 3(b) of the Assignment of Acquisition Agreement, this letter shall serve as notice and a request by the Administrative Agent to the Trustee to pay the Administrative Agent from the Acquisition Fund the Purchase Price from time to time payable under the Acquisition Agreement.

Please advise us if you have any questions.

Sincerely,

John McDonagh
Managing Director

ny-950628

383 Madison Avenue, 23rd Floor, New York, New York 10179
Telephone +1 212 622 4529 Facsimile +1 212 622 4557 john.mcdonagh@chase.com
JPMorgan Chase Bank, N.A.

Encl.

Cc (with encl.):

City of Henderson, Nevada
240 Water Street
Henderson, Nevada 89015
Attention: City Attorney

Kummer Kaempfer Bonner & Renshaw
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, NA 89109
Attention: John C. Jeppsen
Telecopy No.: (702) 796-7181

Pillsbury Winthrop Shaw Pittman LLP
10250 Constellation Boulevard, 21st Floor
Los Angeles, California 90067
Attention: Lewis G. Feldman

Ballard Spahr Andrews & Ingersoll LLP
1735 Market Street
Philadelphia, PA 19103-7599
Attention: Richard Perelman
Telecopy No.: (215) 864-9973

KB Home Nevada, Inc.
750 Pilot Road, Suite F
Las Vegas, NV 89119
Attention: James Widner
Telecopy No.: (702) 614-2645

KB Home Nevada, Inc.
750 Pilot Road, Suite F
Las Vegas, NV 89119
Attention: Chris Stephens
Telecopy No.: (702) 614-2645

KB Home
10990 Wilshire Blvd.
Los Angeles, CA 90024
Attention: Kelly M. Allred
Telecopy No.: (310) 231-4140

Beazer Homes USA, Inc.
1000 Abernathy Road
Suite 1200
Atlanta, GA 30328
Attention: Cory J. Boydston
Senior Vice President
Telecopy No.: (404) 847-4903

Beazer Homes USA, Inc.
4670 South Fort Apache Road
Suite 200
Las Vegas, NV 89147
Attention: Division President
Telecopy No.: (702) 837-2101

Beazer Homes Holdings Corp.
1000 Abernathy Road
Suite 1200
Atlanta, GA 30328
Attention: Cory J. Boydston
Senior Vice President
Telecopy No.: (404) 847-4903

Beazer Homes Holdings Corp.
4670 South Fort Apache Road
Suite 200
Las Vegas, NV 89147
Attention: Division President
Telecopy No.: (702) 837-2101

Rice Silbey Reuther & Sullivan, LLP
3960 Howard Hughes Parkway
Suite 700
Las Vegas, NV 89109
Attention: Stephen M. Sullivan, Esq.
Telecopy No.: (702) 732-7110

Holland & Knight, LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603
Attention: John R. Nyweide, Esq.
Telecopy No.: (312) 715-5740

MTH-Homes Nevada, Inc.
555 West Badura Avenue, Suite 120
Las Vegas, NV 89118
Attention: Robert M. Beville
Telecopy No.: (702) 896-9191

Meritage Homes Corporation
8501 East Princess Drive, Suite 290
Scottsdale, AZ 85255
Attention: Larry Seay
Telecopy No.: (480) 998-9178

Pardee Homes of Nevada
10880 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90024
Attention: Mr. Tony Dolim
Telecopy No.: (253) 928-2474

Sandler and Rosen, LLP
1801 Avenue of the Stars, Suite 510
Los Angeles, CA 90067
Attention: Steven E. Levy
Telecopy No.: (310) 277-5954

Weyerhaeuser Real Estate Co.
33663 Weyerhaeuser Way South
Federal Way, WA 98003
Attention: Treasurer
Telecopy No.: (253) 924-3870

Focus South Group LLC
3455 Cliff Shadows Parkway, Suite 220
Las Vegas, NV 89129
Attention: John A. Ritter
Telecopy No.: (702) 216-2067

Focus Property Group
3455 Cliff Shadows Parkway, Suite 220
Las Vegas, NV 89129
Attention: John A. Ritter
Telecopy No.: (702) 216-2067

Coleman-Toll Limited Partnership
1140 Town Center Drive, Suite 350
Las Vegas, NV 89144
Attention: Gary Mayo
Vice President
Telecopy No.: (702) 243-9610

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Joel H. Rassman
Chief Financial Officer
Executive Vice President and Treasurer
Telecopy No.: (215) 938-8010

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Frederick Cooper
Sr. Vice President, Finance
Telecopy No.: (215) 938-8010

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Kenneth J. Gary, Sr. Vice President
and General Counsel
Telecopy No.: (215) 938-8255

Alameda Investments, LLC
39 East Eagleridge Drive, Suite 102
North Salt Lake, UT 84054
Attention: Leonard K. Arave
Telecopy No.: (801) 299-0550

Alameda Investments, LLC
39 East Eagleridge Drive, Suite 102
North Salt Lake, UT 84054
Attention: Wayne Farnsworth
Telecopy No.: (801) 813-8003

J.P.Morgan

**John McDonagh**
Managing Director

*****NOTICE OF EVENTS OF DEFAULT*****

November 23, 2010

**Via Telecopy to (702) 216-2067**

South Edge, LLC
c/o Focus South Group LLC
3455 Cliff Shadows Parkway, Suite 220
Las Vegas, NV 89189
Attention: John A. Ritter

Re: Amended and Restated Credit Agreement dated as of March 9, 2007 (the "Credit Agreement"), among South Edge, LLC, a Nevada limited-liability company ("Borrower"), JPMorgan Chase Bank, N.A. as Administrative Agent ("Agent"), the Royal Bank of Scotland PLC, as Syndication Agent, J.P. Morgan Securities Inc., as Sole Book Runner and Sole Lead Arranger, and the Lenders party thereto; and "Loan Documents" as defined therein, including the Forbearance Agreement

Dear Borrower:

Certain Definitions

Reference is made to the Credit Agreement and other Loan Documents. Terms defined in the Credit Agreement and used, but not otherwise defined, herein have the meanings ascribed to such terms in the Credit Agreement. If not defined in the Credit Agreement, but defined in another Loan Document referenced herein, then such terms shall have the meanings ascribed to such terms in the referenced Loan Document.

Reference is also made to the "Final Award" dated July 6, 2010 in the JAMS Arbitration Proceeding No. 1260001162 (the "Arbitration Award") in that arbitration (the "Arbitration"). In addition, reference is made to the litigation relating to Borrower among Guarantors and Agent pending as JPMorgan Chase Bank, N.A. v. KB Home et al. pending in the U.S. District Court for the District of Nevada in cases CV-01711-PMP-RJJ, 2:08-CV-01709-PMP-RJJ, 2:08-CV-01713-PMP-RJJ, 2:08-CV-01714-PMP-RJJ, 2:08-CV-01715-PMP-RJJ, 2:08-CV-01716-PMP-RJJ, 2:08-CV-01717-PMP-RJJ, 2:09-CV-01154-PMP-RJJ, 2:09-CV-01547-PMP-RJJ, 2:09-CV-01548-PMP-RJJ, 2:09-CV-01549-PMP-RJJ, 2:09-CV-01550-PMP-RJJ, 2:09-CV-01551-PMP-RJJ, 2:09-CV-01552-PMP-RJJ, (the "Nevada Litigation"), including the amended complaints filed therein by or on behalf of Agent and related motions, briefs, declarations, and other filings by or for the Agent at any time in such

383 Madison Avenue, 23rd Floor, New York, New York 10179
Telephone +1 212 622 4529 Facsimile +1 212 622 4557 john.mcdonagh@chase.com
JPMorgan Chase Bank, N.A.

action (collectively the "Agent's Nevada Litigation") and the amended cross-complaints and related motions, briefs, declarations, and other filings therein (collectively the "Builders' Nevada Litigation") by any Credit Party Defendant therein besides Focus and Borrower (collectively the "Builders"). All Events of Default under the Credit Agreement, including those addressed in this letter, cause "immediate and self-executing Events of Default" under the Operating Agreement as explained in the Arbitration Award. The seriousness, comprehensiveness and nature of such Cross-Events of Default prevent Borrower from actions or decisions being authorized or directed by the Builder Members that are adverse to the Lenders or the Project, such as the type threatened or asserted in the Builders' Nevada Litigation.

Defaults/Events of Default

This letter is to advise the Borrower and Guarantors that additional Defaults and Events of Default have occurred pursuant to Section 9.01 of the Credit Agreement as follows:

- Borrower's failure to timely pay interest and principal on the Loans, which debts have matured by their terms, resulting in Events of Default under Sections 9.01(a) and 9.01(b) of the Credit Agreement;
- The failure of the Builder Members to timely perform Takedowns, as required by Sections 5.07 and 5.08 of the Credit Agreement and by the Assignment of Acquisition Agreements, as confirmed in the Arbitration Award, together with certain other breaches of the Credit Agreement, resulting in Events of Default under Sections 9.01(d), (e) and (l) of the Credit Agreement;
- The purported unilateral amendments and extensions with respect to Takedowns, wrongly attempted by the Builders as referenced in the Arbitration Award, in violation of Section 7.03(a) of the Credit Agreement and the Assignment of Acquisitions Agreement, thereby resulting in Events of Default pursuant to Sections 9.01(d), (e) and (l) of the Credit Agreement;
- The voluntary filing by Woodside Group, Inc., Alameda Investments LLC, Kimball Hill, Inc. and Kimball Hill Homes Nevada, Inc. of petitions seeking reorganization under Title 11 of the United States Code, as well as the rejection of all obligations to Borrower pursuant to 11 U.S.C. § 365, resulting in Events of Default under Sections 9.01(i) and (r) of the Credit Agreement;
- Borrower's failure to diligently continue and complete construction of the Improvements on the Project in the manner and time required under Sections 5.01 and 9.01(o) of the Credit Agreement, including as confirmed in the Arbitration

Award and including the Improvements that are required by the Development Agreement, any other Project Agreements, any Project Contract, or other Borrower contracts with the City or which are needed to maintain or preserve any Permit or any entitlement or benefit for the Project from the City, including those that have been identified to Borrower or its agents or contractors by the City as Improvements or other work needed to be performed at or about the Project;

- Borrower's shutting down, suspending required work and activities, and other violations of Sections 5.07 and 9.01(o), including those referenced in the Arbitration Award, which create Material Adverse Effects and create Events of Default under Sections 9.01(e) and (o) of the Credit Agreement, together with the other failures of Borrower to perform the aforementioned work and activities as required by or for the City or the Development Agreement, the other Project Agreements or Project Contracts;

- Borrower's terminating, amending or making Modifications in the Construction Management Agreement, the Project Engineer's Agreement and other Major Project Contracts or Major Subcontracts or Approved Plans and Specifications, Approved Project Schedule or Approved Project Budget, in violation of Sections 5.08 or 5.07, which materially harm the value of the Collateral and create Events of Default under Sections 9.01(e) and (o) of the Credit Agreement;

- Failure by the Members to make the Capital Contributions under section 2.3.6 of the Operating Agreement in order to finance the costs of constructing portions of the Major Infrastructure, resulting in an Event of Default pursuant to Operating Agreement Section 11.1.1 and as otherwise described in the Arbitration Award;

- Borrower's failure to provide notice of delays in the construction of the Project as required by Section 5.04 of the Credit Agreement, each resulting in Events of Default pursuant to Sections 9.01(d), (e) and (o) of the Credit Agreement;

- Borrower's failure to timely make Balancing Payments requested in a Balancing Notice from the Administrative Agent as required pursuant to Section 5.09 of the Credit Agreement, including as referenced in the Agent's Nevada Litigation, resulting in Events of Default pursuant to Credit Agreement Section 9.01(d);

- Borrower's failure to provide information regarding the Project and related matters in response to requests for such information by the Administrative Agent as required pursuant to Sections 5.12, 6.01, 6.02 and 6.06 of the Credit Agreement, resulting in Events of Default pursuant to Credit Agreement Section 9.01(e);

- Borrower's failure to timely pay interest in the LID Bonds as required pursuant to Sections 6.04, 6.15 and 7.02 of the Credit Agreement, resulting in Events of Default

pursuant to Credit Agreement Sections 9.01(d) and 9.01(e), as well as the failure to pay when due Project LID bond and property tax obligations as noticed to Borrower in violation of Section 9.01(p) which, even when and to the extent cured by late payment, continue to prejudice the rights and interests of the Lenders by inspiring consideration by the City and LID bondholders to consider adverse changes in the availability of LID proceeds for the Project;

- Borrower's failure to maintain the interest reserve provided for in the Operating Agreement as required pursuant to Section 6.18 of the Credit Agreement, resulting in Events of Default pursuant to Credit Agreement Section 9.01(e);
- Borrower has engaged in transactions with Affiliates of Members or Members in violation of Credit Agreement Sections 7.07 and 8.01(v), creating Events of Default under Section 9.01(e), including as described in the Arbitration Award and Agent's Nevada Litigation. Such prohibited transactions also including Borrower's allowing Builder Members to make decisions for Borrower, or to require or cause actions by Borrower, that are contrary to the prohibition in the Arbitration Award (and Operating Agreement § 11.2) for such defaulting Builder Members to vote as to "matters relating to their Events of Default";
- Borrower has violated its Operating Agreement contrary to Section 8.01(y) of the Credit Agreement, as described in the Arbitration Award and Agent's Nevada Litigation creating Events of Default under Section 9.01(e);
- Borrower has inadequate capital in violation of Section 8.01(x) creating Events of Default under Section 9.01(e);
- Borrower has become unable, and has generally failed, to pay its debts as they come due under in violation of, and creating Events of Default under, Section 9.01(j); and
- Any other Defaults or Events of Default that are admitted by Borrower or should have been admitted by Borrower in response to the Agent's letter dated as of the date hereof, including in response to the Agent's reminder to comply with Credit Agreement § 6.02.

All rights and remedies of Lenders and Agent on account of all Defaults and Events of Default under or pursuant to any or all of the Loan Documents are expressly reserved. Agent may at any time do whatever is permitted by the Loan Documents or by applicable law, including as provided in Sections 9.02 or 9.03 of the Credit Agreement or Deed of Trust Section 10, including without limitation (and without any obligation to do so) to perform or pay any obligations of the Borrower for the account of Borrower or otherwise to do any act that Borrower might do on its own behalf, including as provided in Credit Agreement § 9.03, Assignment of Acquisition Agreement §§ 13 and 3, Deed of Trust §§ 7, 10(b) and 12 and

p.5, and Assignment of Contracts, Permits and Plans and Specifications §§ 3 and 7. Pursuant to Sections 9.03(d) and (k) of the Credit Agreement, the Agent may make the Approved Plans and Specifications conform to the requirements of the Loan Documents, the draws under the Credit Agreement, what was actually created or what the City expects based on filings by or on behalf of Borrower or its contractors or agents.

In addition, pursuant to Section 11.03(b) of the Credit Agreement, Agent demands, on behalf of itself and Lenders and their Related Parties, indemnification on account of the Builders' Nevada Litigation, as well as all reasonable out-of-pocket expenses incurred by any of them pursuant to Section 11.03, including on account of their need to respond to Builder discovery in the Nevada Litigation or otherwise on account of the Events of Default. Agent likewise demands indemnification under the Assignment of Acquisition Agreements § 15, the Deed of Trust § 4, and the Assignment of Contracts, Permits, and Plans and Specifications § 9 as to all the relevant defaults and wrongs committed or threatened by Builders either directly or through their purported control over the Borrower, including those referenced in the Arbitration Award or Agent's Nevada Litigation.

Miscellaneous Matters

If and to the extent that Borrower disputes any default or Event of Default for any reason or to any extent, Agent demands, pursuant to Sections 6.01, 6.02 and 6.18 of the Credit Agreement and other the Loan Documents, that Borrower describe the basis for each such dispute and deliver all relevant evidence and documentation of its position.

Borrower is reminded that as a consequence of the Defaults and Events of Default described herein, the Agent and the Lenders may at any time take any and all such actions as they deem appropriate to protect the Lenders' interests and Collateral under the Loan Documents and to collect the debt thereunder. Such actions may be taken at any time without further notice or demand except as may be required pursuant to applicable law. In the event any such actions are taken, the Agent and the Lenders shall hold the Borrower responsible for all their additional costs and expenses, including attorney's fees and court costs, incurred in connection with the enforcement of the Loan Documents and the realization upon or protection of the security for the Loans.

In the event the Borrower makes any subsequent payment of any amount less than all of the indebtedness due and payable under the Loan (a "Partial Payment"), the Agent may apply such Partial Payment to the indebtedness owing under the Loan Documents as a partial payment. No such Partial Payment or the acceptance thereof by the Agent shall constitute or be deemed or construed as a waiver of any default under the Loan Documents. In addition, any Partial Payment or the acceptance of any Partial Payment by Agent or any Lender shall not constitute or be deemed or construed as a cure of any existing default under the Loan

Documents, a modification of the Loan Documents or the terms of this letter, a reinstatement or satisfaction of the Loan, or a waiver, modification, relinquishment or forbearance by the Agent or the Lenders of any of their rights or remedies under the Loan Documents or at law or in equity, all of which rights and remedies the Agent and the Lenders hereby expressly reserve.

Please direct any questions concerning this matter to the undersigned at the address and telephone number set forth above.

Nothing contained in this letter is intended to create or constitute a waiver, modification, relinquishment or forbearance by Agent or any Lender of any of its rights and remedies under the Loan Documents or Agent's Nevada Litigation, including without limitation, any and all rights or remedies in connection with any other Defaults or Events of Default that may now or hereafter exist under the Loan Documents, all of which rights and remedies are hereby expressly reserved.

Sincerely,

John McDonagh
Managing Director

cc:

Kummer Kaempfer Bonner & Renshaw
Seventh Floor
3800 Howard Hughes Parkway
Las Vegas, NA 89109
Attention: John C. Jeppsen
Telecopy No.: (702) 796-7181

Ballard Spahr Andrews & Ingersoll LLP
1735 Market Street
Philadelphia, PA 19103-7599
Attention: Richard Perelman
Telecopy No.: (215) 864-9973

KB Home Nevada, Inc.
750 Pilot Road, Suite F
Las Vegas, NV 89119
Attention: James Widner
Telecopy No.: (702) 614-2645

KB Home Nevada, Inc.
750 Pilot Road, Suite F
Las Vegas, NV 89119
Attention: Chris Stephens
Telecopy No.: (702) 614-2645

KB Home
10990 Wilshire Blvd.
Los Angeles, CA 90024
Attention: Kelly M. Allred
Telecopy No.: (310) 231-4140

Beazer Homes USA, Inc.
1000 Abernathy Road
Suite 1200
Atlanta, GA 30328
Attention: Cory J. Boydston
Senior Vice President
Telecopy No.: (404) 847-4903

Beazer Homes USA, Inc.
4670 South Fort Apache Road
Suite 200
Las Vegas, NV 89147
Attention: Division President
Telecopy No.: (702) 837-2101

Beazer Homes Holdings Corp.
1000 Abernathy Road
Suite 1200
Atlanta, GA 30328
Attention: Cory J. Boydston
Senior Vice President
Telecopy No.: (404) 847-4903

Beazer Homes Holdings Corp.
4670 South Fort Apache Road
Suite 200
Las Vegas, NV 89147
Attention: Division President
Telecopy No.: (702) 837-2101

Rice Silbey Reuther & Sullivan, LLP
3960 Howard Hughes Parkway
Suite 700
Las Vegas, NV 89109
Attention: Stephen M. Sullivan, Esq.
Telecopy No.: (702) 732-7110

Holland & Knight, LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603
Attention: John R. Nyweide, Esq.
Telecopy No.: (312) 715-5740

MTH-Homes Nevada, Inc.
555 West Badura Avenue, Suite 120
Las Vegas, NV 89118
Attention: Robert M. Beville
Telecopy No.: (702) 896-9191

Meritage Homes Corporation
8501 East Princess Drive, Suite 290
Scottsdale, AZ 85255
Attention: Larry Seay
Telecopy No.: (480) 998-9178

Pardee Homes of Nevada
10880 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90024
Attention: Mr. Tony Dolim
Telecopy No.: (253) 928-2474

Sandler and Rosen, LLP
1801 Avenue of the Stars, Suite 510
Los Angeles, CA 90067
Attention: Steven E. Levy
Telecopy No.: (310) 277-5954

Weyerhaeuser Real Estate Co.
33663 Weyerhaeuser Way South
Federal Way, WA 98003
Attention: Treasurer
Telecopy No.: (253) 924-3870

Focus South Group LLC
3455 Cliff Shadows Parkway, Suite 220
Las Vegas, NV 89129
Attention: John A. Ritter
Telecopy No.: (702) 216-2067

Focus Property Group
3455 Cliff Shadows Parkway, Suite 220
Las Vegas, NV 89129
Attention: John A. Ritter
Telecopy No.: (702) 216-2067

Coleman-Toll Limited Partnership
1140 Town Center Drive, Suite 350
Las Vegas, NV 89144
Attention: Gary Mayo
Vice President
Telecopy No.: (702) 243-9610

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Joel H. Rassman
Chief Financial Officer
Executive Vice President and Treasurer
Telecopy No.: (215) 938-8010

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Frederick Cooper
Sr. Vice President, Finance
Telecopy No.: (215) 938-8010

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, PA 19006
Attention: Kenneth J. Gary, Sr. Vice President
and General Counsel
Telecopy No.: (215) 938-8255

Alameda Investments, LLC
39 East Eagleridge Drive, Suite 102
North Salt Lake, UT 84054
Attention: Leonard K. Arave
Telecopy No.: (801) 299-0550

Alameda Investments, LLC
39 East Eagleridge Drive, Suite 102
North Salt Lake, UT 84054
Attention: Wayne Farnsworth
Telecopy No.: (801) 813-8003