# FORBEARANCE AGREEMENT

This **FORBEARANCE AGREEMENT** is dated as of May 27, 2008 by and among: (i) South Edge, LLC ("Borrower"), a Nevada limited liability company, (ii) Beazer Homes USA, Inc., a Delaware corporation, Beazer Homes Holding Corp., a Delaware corporation, Meritage Homes Corporation, a Maryland corporation, Meritage Homes of Nevada, Inc., an Arizona Corporation, Weyerhaeuser Real Estate Company, a Washington corporation, Pardee Homes of Nevada, a Nevada Corporation, Toll Brothers, Inc., a Delaware corporation, Coleman-Toll Limited Partnership, a Nevada limited liability company, John A. Ritter, an individual, Focus Group South, LLC, a Nevada limited liability company, KB Home, a Delaware corporation and KB Home Nevada, Inc., a Nevada corporation, Kimball Hill Inc., an Illinois corporation, Kimball Hill Homes Nevada, Inc., a Nevada corporation, Woodside Group, Inc., a Nevada corporation, Alameda Investments, LLC, a Delaware limited liability company, and (iii) JPMorgan Chase Bank, N.A., a national banking association, as administrative agent ("Agent") under that certain Amended and Restated Credit Agreement (as in effect on the date hereof, the "Credit Agreement") dated as of March 9, 2007, among Borrower, Agent, the Royal Bank of Scotland PLC, as syndication agent, J.P. Morgan Securities Inc., as sole book runner and sole lead arranger, and the Lenders party thereto.

Borrower has requested Agent temporarily to forbear from exercising its rights and remedies under the Loan Documents with respect to certain existing and anticipated Events of Default (as defined in the Credit Agreement) in order to provide Borrower with sufficient time to propose, negotiate and close a potential restructuring of Loans advanced under the Credit Agreement. Agent is willing to grant such forbearance on the terms and subject to the conditions provided below. Accordingly, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

Section 1.　　Loan Documents; Defined Terms.

(a)　　The parties hereto acknowledge and agree that:

(i)　　Borrower is indebted to the Lenders under the Loan Documents in the amounts specified in Schedule I; and

(ii)　　Schedule II contains a true, correct and complete listing of the principal Loan Documents.

(b)　　Unless otherwise defined herein, terms defined in the Credit Agreement are used herein as therein defined. As used herein, "Forbearing Credit Party" means each of the Credit Parties (other than Borrower) which shall have executed this Forbearance Agreement as of the Effective Date, and "Non-Forbearing Credit Party" means each of the Credit Parties which have not executed this Forbearance Agreement as of the Effective Date.

Section 2.　　Specified Defaults.　　As used herein, "Specified Defaults" shall mean the following Defaults and Events of Default: (i) the Event of Default existing under

Section 9.01(b) of the Credit Agreement with respect to Borrower's failure to pay the interest payment due on the Loans on February 29, 2008; (ii) the Event of Default existing under Section 9.01(b) of the Credit Agreement with respect to Borrower's failure to pay the interest payment due on the Loans on March 31, 2008; (iii) the Event of Default existing under Section 9.01(b) of the Credit Agreement with respect to Borrower's failure to pay the interest payment due on the Loans on April 30, 2008; (iv) subject to Section 3(d) of this Forbearance Agreement, any Default or Event of Default arising solely with respect to the failure by a Member to complete its scheduled Takedown on April 15, 2008; (v) the Event of Default existing under Section 6.18 of the Credit Agreement on account of Borrower's failure to maintain the interest reserve provided for in the Operating Agreement; (vi) the Event of Default existing under Section 9.01(i) of the Credit Agreement with respect to the voluntary commencement by Kimball Hill, Inc. and Kimball Hill Homes Nevada, Inc. of a petition seeking reorganization under Federal bankruptcy law; and (vii) any other Defaults or Events of Default existing as of the date hereof or which may arise during the Forbearance Period (as defined below), other than any New Material Default. "New Material Default" means any of (A) the occurrence of any of the events described in Section 5(d); (B) the occurrence of any of the events described in Section 5(e) which would result in termination of the Forbearance Period; (C) any of the Collateral shall become encumbered by one or more Liens, claims of Liens or bonded stop notices (other than Permitted Encumbrances, Liens that are bonded by Borrower in a manner reasonably satisfactory to Agent, and carriers', warehousemen's, mechanics', materialmen's, repairmen's and other like Liens imposed by law which have not been recorded against the Property) exceeding, in the aggregate, $5,000,000; and (D) the occurrence of any other Defaults or Events of Default (other than those described in clauses (i), (ii), (iii), (iv), (v) and (vi) of the preceding sentence) involving the failure to pay money or that, individually or in the aggregate, would materially and adversely affect (1) the value of the Collateral, (2) the ability of the Agent or the Lenders to exercise remedies with respect to any Collateral or Guaranties or (3) the timing of such remedies; provided, however, that a New Material Default shall not include any event with respect to a Member or Parent Guarantor which does not give rise to termination of this Forbearance Agreement under Section 5(e).

Section 3.    Forbearance; Extension of the Takedown Schedule.

(a)    Agent agrees, on the terms and subject to the conditions contained herein, to forbear during the period (the "Forbearance Period") from and after the Effective Date (as defined in Section 4(b)) until (but excluding) the Forbearance Termination Date (as defined in Section 5), from taking any of the following actions against Borrower and the Forbearing Credit Parties based solely on any Specified Default:

Instituting any suit or proceeding in any court, or taking any other formal action, seeking to enforce the repayment of the Loans, or to realize upon any collateral security therefor (including any collateral in the Cash Collateral Accounts), or to exercise any of its rights and remedies solely with respect to the Specified Defaults under any of the Loan Documents (all such actions being referred to herein as "Enforcement Actions"), excluding Enforcement Actions brought against the Non-Forbearing Credit Parties and/or in connection with any collateral security provided

la-975558                                        2

by or relating directly to the Non-Forbearing Credit Parties and/or any Guarantee executed by any such Non-Forbearing Credit Party.

(b)     Notwithstanding such forbearance, it is understood by Borrower and the Forbearing Credit Parties that Agent has not waived the Specified Defaults or any other Defaults or Event of Defaults or any rights or remedies in respect thereof under the Loan Documents, at equity, in law or otherwise, and that Agent's consent to this Forbearance Agreement shall not in any way be considered to be a cure of the Specified Defaults or any other Default or Event of Default, or a discharge or compromise with respect to the Loans or Notes.  Moreover, and without limiting the provisions of <u>Section 13</u>, neither this Forbearance Agreement, nor the terms contemplated hereby, nor the receipt and application of sums during the Forbearance Period pursuant to the terms hereof shall, except for the forbearance from the exercise of Enforcement Actions by Agent expressly provided above: (i) constitute a waiver by Agent or the Lenders of their rights or remedies under the Loan Documents, at equity, in law or otherwise, (ii) result in Agent or the Lenders being estopped from exercising any such rights or remedies from and after the Forbearance Termination Date, or (iii) be construed as an agreement by Agent not to respond to (including to defend and to assert counterclaims in) any litigation or other proceeding commenced against it by Borrower or any other Credit Party.  During the Forbearance Period, Borrower shall not be entitled to any rights provided to it in the Loan Documents that are conditioned on there being no Default or Event of Default in existence, unless expressly permitted or provided for in this Forbearance Agreement.

(c)     During the Forbearance Period (as defined below), the Loans will bear interest at the pre-default rate, provided that if the Secured Obligations are not repaid in full or restructured pursuant to definitive final documentation duly executed and delivered by all appropriate parties prior to the Forbearance Termination Date (as defined below), Borrower from and thereafter shall be liable in accordance with the Loan Documents for any and all sums and charges due pursuant thereto, including, without limitation, all default rate interest accruing in accordance with the Loan Documents on the unpaid principal balance of and interest on the Loans as of and after the Effective Date.

(d)     To the extent permitted under the Credit Agreement, Agent hereby agrees to (a) extend the outside date of the Takedown of the Phases currently scheduled for April 15, 2008 until the later of (i) the Forbearance Termination Date (as defined below), and (ii) five (5) Business Days following the end of the Forbearance Period, if the Forbearance Period is terminated prior to the Expiration Date (as defined below), and (b) make conforming modifications of the "Takedown Schedules" attached to certain of the Acquisition Agreements, as Borrower and the Members may determine.  No Takedown shall be permitted during the Forbearance Period.

Section 4.     <u>Conditions.</u>

(a)     As conditions to the effectiveness of this Forbearance Agreement:

(i)        Borrower shall have paid directly to Agent on account of the Lenders the interest payments due on February 29, 2008, March 31, 2008 and April 30, 2008, at the contract (i.e., pre-default) rate of interest assuming the Loans did not convert to ABR Borrowings, as a result of the Specified Defaults, it being understood and agreed that Agent is not waiving its right to collect any interest at the converted or default rate but simply forbearing from exercising its remedies with respect thereto under Section 3;

(ii)       The case (the "Litigation") encaptioned, Focus South Group, LLC v. JP Morgan Chase Bank, N.A., et al. (Case No. A559988-B, Dept. No. XIII), pending in the District Court of Clark County, Nevada (the "Nevada State Court"), shall be dismissed by all plaintiffs without prejudice pursuant to the Litigation Stipulation (as defined below). The Temporary Restraining Order entered in the Litigation on March 31, 2008 and continued until May 27, 2008, shall be dissolved and of no further force and effect upon the Effective Date pursuant to an order of dismissal (which shall be in form and substance satisfactory to plaintiffs and defendants), and neither Focus Group South, LLC nor any other plaintiff (the "Focus Member") shall seek to extend or amend such Order, unless the Effective Date does not occur on or before May 27, 2008, in which case the Focus Member shall not be prohibited from seeking to extend such temporary restraining order through the Effective Date.  Other than the Litigation Stipulation, the Focus Member shall not submit a proposed preliminary injunction order or any other proposed order regarding the Litigation to the Nevada State Court prior to the Effective Date or during the Forbearance Period.  The Focus Member shall not refile or otherwise recommence the Litigation or other litigation regarding the Loan Documents or the Project during the Forbearance Period but fully reserves the right to do so upon the expiration thereof.  The Agent, the Lenders and the Focus Member expressly acknowledge that the dismissal of the Litigation pursuant to this Section 4(a)(ii) is without prejudice and that nothing in this Forbearance Agreement, including, without limitation, the releases provided for in Section 9, is intended to or shall modify, waive, impair or in any way affect any of the claims, rights and defenses of Focus Member, on the one hand, and the Agent and the Lenders on the other, asserted or assertable in the Litigation. For purposes of this Agreement, the term "Litigation Stipulation" shall mean a stipulation between the defendants and the plaintiffs in form and substance satisfactory to the plaintiffs and defendants and approved by the Nevada State Court providing for: (a) the dismissal of the Litigation without prejudice and (b) an agreement by the defendants that the plaintiffs shall be entitled to reinstate the Litigation as if the Litigation had never been dismissed at their sole discretion in the event that the Forbearance Period terminates without a consensual comprehensive restructuring of the Secured Obligations;

(iii)      All fees, expenses and disbursements of Agent (including, without limitation, legal expenses) relating to the Credit Agreement, the Litigation, this Forbearance Agreement and/or the transactions contemplated hereby, for which statements have been submitted to Borrower on or before the Effective Date, shall have been paid by Borrower;

(iv)    Agent shall have received evidence in form, scope and substance satisfactory to it that the amounts to be paid under Section 4(a)(i) and (iii) shall have been paid in full; and

(v)    Agent, Borrower and each of the Forbearing Credit Parties shall have executed and delivered this Forbearance Agreement to the other parties hereto.

(b)    Provided that the conditions contained in clause (a) above have been satisfied, this Forbearance Agreement shall become effective on the date the last such condition shall have been satisfied (the "Effective Date").    In the event that Agent executes this Forbearance Agreement prior to the satisfaction of each of the other conditions contained clause (a) and such conditions do not occur within three (3) Business Day thereafter, Agent's execution of this Forbearance Agreement shall be deemed null and void.    Upon the Effective Date, the Agent shall release from the Cash Collateral Account maintained under Section 7.03(b)(iii) of the Credit Agreement for the Focus Member an amount equal to such Member's Adjusted Pro Rata Share (which is 15.59%) of the interest payment to be made under Section 4(a)(i) (but not any other amount to be paid in this Section 4) and shall apply such amount to such interest payment on the Effective Date.    In addition, the Agent shall release from the Focus Cash Collateral Account  an amount equal to the Focus Member's Adjusted Pro Rata Share of each interest payment to be made during the Forbearance Period on the date that such payment is due and shall apply such amounts to such interest payment on such date, provided that the Forbearance Termination Date has not occurred prior to such time, and, provided further, that the remainder of the interest payments then due under the Loan Documents have been paid.

Section 5.    Termination.  The Forbearance Period shall terminate and be of no further force or effect at 10:00 a.m. (New York time) on the date (the "Forbearance Termination Date"), which is the earliest of:

(a)    June 30, 2008, or such later date as may be agreed upon by Agent (with the consent of the Required Lenders) and Borrower in writing (the "Expiration Date");

(b)    The commencement of any litigation or other proceeding against Agent or any of the other Lenders by any Credit Party relating to the Loans, the Loan Documents, the Collateral, the Project or this Forbearance Agreement;

(c)    Two (2) Business Days following the date on which Agent gives notice to Borrower of the occurrence of a breach by Borrower of any of the representations, warranties or covenants contained in this Forbearance Agreement, or in any document or agreement now or hereafter delivered in connection with or pursuant to the terms of this Forbearance Agreement;

(d)    The date on which either (i) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (A) liquidation, reorganization or other relief in respect of Borrower or its debts, or of a substantial part of

its assets, under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (B) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Borrower or for a substantial part of its assets or a substantial part of its assets, and such involuntary proceeding or petition shall not be dismissed within thirty (30) days of filing; or (ii) Borrower shall (A) voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (B) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (ii) above, (C) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Borrower or for a substantial part of its assets, (D) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (E) make a general assignment for the benefit of creditors or (F) take any action for the purpose of effecting any of the foregoing;

      (e)    The date on which any event described in Section 5(d) shall occur with respect to any Credit Party (other than the Borrower or the Non-Forbearing Credit Parties); provided, however, that the occurrence of such an event with respect to a Member or Parent Guarantor shall not terminate the Forbearance Period so long as such Member or Parent Guarantor is not a Key Member or Parent Guarantor of a Key Member and such event shall not have occurred with respect to more than three Members or Parent Guarantors; and

      (f)    The date on which Agent (on its own determination or pursuant to the direction of the Required Lenders) elects to terminate the Forbearance Period after any event, which alone or with the giving of notice or lapse of time or both would constitute an Event of Default (other than a Specified Default) occurs.

Upon termination of the Forbearance Period, Agent and the Lenders shall immediately be fully restored to the position they would have held if this Forbearance Agreement had never been executed; provided, however, that notwithstanding anything else in this Forbearance Agreement, if the Forbearance Period terminates pursuant to Section 5(a), 5(b), 5(c), 5(d), 5(e) or 5(f) of this Forbearance Agreement (other than a termination pursuant to Section 5(c), 5(d), 5(e) or 5(f) as a result of acts or omissions by the Focus Member or John A. Ritter), the Agent and the Lenders shall not take any action or commence any proceeding to apply any funds in the Cash Collateral Account initially funded by the Focus Member to the Secured Obligations until the expiration of the fifth (5th) Business Day following the termination of the Forbearance Period.

      Section 6.    Extension; Amendments.    The terms of this Forbearance Agreement may be modified, waived, supplemented or amended, and the Forbearance Period may be extended, only by a writing or writings executed by Agent (with the consent of the Required Lenders), Borrower and the Forbearing Credit Parties. It is understood and agreed that neither Agent nor any Lender is nor shall it be under any obligation, express or implied, to consent to any modification, waiver, supplement or amendment hereof, or to any proposed extension of the Forbearance Period.

Section 7.   <u>Continuing Effect</u>. Except as expressly provided herein each Loan Document shall continue unchanged and in full force and effect, and all rights, powers, privileges and remedies of the Agent and Lenders thereunder are hereby expressly reserved. Without in any way limiting the generality of the foregoing, and subject to <u>Section 3(c)</u>, Borrower shall be liable in accordance with the Loan Documents for any and all sums and charges due pursuant thereto, including, without limitation, default interest and late charges, if any.

Section 8.   <u>Covenants</u>. In addition to the covenants and agreements made by Borrower in the Loan Documents, Borrower and, where set forth below, each of the Forbearing Credit Parties covenant and agree that:

(a)   In addition to any information or other material that it is required to deliver to the Agent under the Loan Documents, Borrower shall from time to time also provide or cause to be provided to Agent, promptly upon request, reports of accounts payable covering such time periods as may be requested by Agent and setting forth with respect to each account payable, among other things, the amount of the payable, the identity of the account creditor, the aging thereof and any known disputes relating to the payable and the status thereof. Borrower shall also use reasonable efforts to provide Agent with such information as Agent may reasonably request from time to time relating to the completion and sale of housing units constructed or to be constructed on Phases acquired to date by the Members.

(b)   Without limiting Borrower's obligations under the Credit Agreement, Borrower shall (and each Forbearing Credit Party shall use reasonable efforts to cause Borrower to) cooperate with Agent and its agents in the conduct of any appraisal which Agent may desire to have undertaken and any other studies or evaluations of the Project (it being acknowledged by the Credit Parties that, notwithstanding any provisions of the Credit Agreement to the contrary, the Credit Parties shall not be entitled to obtain copies of any such appraisals, studies of evaluations (provided, however, that nothing herein shall preclude the Credit Parties from seeking discovery, disclosure, or production or such appraisals, studies or evaluations after the termination of the Forbearance Period, as may be permitted by law)).

(c)   Borrower shall use reasonable efforts to enforce Borrower's claims and rights (and any such claims and rights pledged to Agent) in any insolvency proceeding involving another Credit Party.

(d)   Subject to the provisions of Section 6.04 of the Credit Agreement, Borrower shall pay all obligations of Borrower under Section 6.04 of the Credit Agreement, and all other accounts payable in respect of the Project (including without limitation, all amounts due and owing to contractors, subcontractors, suppliers, material men and other third parties), whether such obligations and accounts payable arose prior to the Effective Date or during the Forbearance Period, and shall provide evidence in form, scope and substance satisfactory to Agent upon request thereof. Each Forbearing Credit Party agrees that if Borrower fails to pay such amounts arising prior to the Effective Dave and during the Forbearance Period, it shall pay its Adjusted Pro Rata Share of such

amounts, together with such Forbearing Credit Party's pro rata share of any such amounts not paid by any other Credit Party (such that the amount is paid in full). Nothing in this Section 8(d) shall require any Forbearing Credit Party to pay any obligations due to the Agent and the Lenders under the Loan Documents or to pay any obligations or accounts payable to any Member or any affiliate of a Member.

(e)    Without limiting any of Agent's rights or remedies under the Loan Documents, Borrower shall pay to Agent within two (2) Business Days following written demand (i) all costs and expenses of Agent (including, without limitation, the fees and disbursements of its legal counsel) incurred in connection with the negotiation, preparation, execution, delivery and performance of this Forbearance Agreement, or any waiver or amendment of or supplement or other modification to, this Forbearance Agreement, and (ii) all costs and expenses (including, without limitation, the fees and disbursements of legal counsel to Agent) of collection or incident to the enforcement, protection or preservation of any right or claim of Agent under this Forbearance Agreement. All payments are to be made by Borrower under this clause (d) notwithstanding the availability of cash collateral or letters of credit held by Agent. Notwithstanding anything in Section 8(d) to the contrary, each Forbearing Credit Party agrees that if Borrower fails to pay such amounts, it shall pay its Adjusted Pro Rata Share of such amounts, together with such Forbearing Credit Party's pro rata share of any such amounts not paid by any other Credit Party (such that the amount is paid in full).

(f)    Borrower shall give immediate notice by telecopy to Agent of any event or condition described in Section 5 (other than Section 5(a)). Each Forbearing Credit Party shall give immediate notice by telecopy to Agent of any event or condition described in Section 5 (other than Section 5(a)) caused or taken by such Forbearing Credit Party of which such Forbearing Credit Party has knowledge.

Section 9.    Release.  Borrower and each Forbearing Credit Party does hereby release, acquit and forever discharge Agent, the Syndication Agent and the Lenders and all past, present and future participating lenders, subsidiaries, affiliates, officers, director, shareholders, agents, employees, servants, attorneys and representatives of Agent, the Syndication Agent and the Lenders, as well as the respective heirs, executors, administrators, personal representatives, successors and assigns of any and all of them (hereinafter collectively being referred to as the "Released Parties") of and from any and all claims, demands, debts, losses, costs, expenses, proceedings, judgments, damages, actions, causes of action, suits, contracts, agreements, obligations, accounts, offsets against the Loans and liabilities of any kind of character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, including, without limitation, such claims as fraud, mistake, duress and usury, which any of Borrower and/or each Forbearing Credit Party ever had, now has or might hereafter have against the Released Parties, or any of them, jointly or severally, for or by reason of any matter, cause or thing whatsoever arising on or before the date hereof, which relates to, is based on, or arises out of, by reason of or in connection with, in whole or in part, directly or indirectly: (a) the Loan Documents, (b) the Loans, the Collateral or the administration of either of the foregoing, or (c) the entering into this Forbearance Agreement, or any other documents or agreements contemplated hereby or entered into in connection herewith.  In addition, Borrower and each Forbearing Credit Party agrees not to (i) commence, join in, prosecute or participate in any suit

or other proceeding in a position which is adverse to any of the Released Parties arising directly or indirectly from any of the foregoing matters arising on or before the date hereof, or (ii) assert or seek to assert any claim, offset, demand, action, counterclaim or crossclaim of any kind or nature whatsoever arising directly or indirectly from any of the foregoing matters arising on or before the date hereof.

Section 10.    Counterparts.  This Forbearance Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Forbearance Agreement by signing any such counterpart.

Section 11.    Benefit of Agreement.  This Forbearance Agreement is solely for the benefit of, is binding upon and is personal to the signatories hereto and their respective successors and assigns (provided that neither Borrower nor any Forbearing Credit Party shall assign this Forbearance Agreement or its rights and/or obligations hereunder without the prior written consent of Agent) and no other person or entity (including, without limitation, any other creditor of or claimant of or against Borrower or any Forbearing Credit Party) shall have any rights under, or because of the existence of, this Forbearance Agreement.

Section 12.    GOVERNING LAW.   THIS FORBEARANCE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

Section 13.    No Commitment or Waiver.  Neither this Forbearance Agreement, nor the terms contemplated hereby, nor the receipt and application of sums during the Forbearance Period pursuant to the terms hereof, nor any action or inaction on the part of Agent or Lenders shall be construed to constitute or represent (a) a commitment or agreement by Agent or the Lenders to make any new loans or grant or extend any financial accommodations to Borrower or any other persons or entities, (b) a commitment or agreement by Agent or the Lenders to modify, extend or restructure the Loans or any other indebtedness of Borrower, or to grant or extend any financial accommodations (other than as expressly provided for herein) with respect to the Loans or any other indebtedness of any Credit Party, or (c) an intention by Agent or the Lenders to waive, modify or, except as expressly provided in Section 3, forbear from exercising any of its rights, powers, privileges or remedies under the Loan Documents, at law, in equity or otherwise, and Borrower and Forbearing Credit Parties acknowledge, agree and confirm that no such commitment, waiver, modification or, except as expressly provided in Section 3, forbearance has been offered, granted, extended or agreed to by Agent or the Lenders.

Section 14.    Due Authorization.  Each party executing and delivering this Forbearance Agreement represents and warrants to all other parties that, as to itself:

(a)    Such party has the full authority and legal right and power to do so and to perform the terms hereof and the transactions contemplated hereby;

(b)    All necessary corporate, partnership or other action on the part of such party to be taken in connection with the execution, delivery and performance of this

Forbearance Agreement and the transactions contemplated hereby have been duly and effectively taken; and

(c)     The execution, delivery and performance by such party does not constitute a violation or breach of such party's articles of incorporation, by-laws, partnership agreement, operating agreement or certificate of partnership, or any other agreement or law by which such party is bound.

Section 15.     Other Representations of Borrower.     Borrower represents and warrants to Agent and the Lenders that:

(a)     As of the date hereof, there are no defaults or Events of Defaults (and no events which with the giving of notice or the lapse of time or both would constitute a default of Event of Default) under the Loan Documents other than the Specified Defaults; and

(b)     The Loan Documents and the provisions thereof are and remain legal, valid and binding obligations of the Credit Parties enforceable in accordance with their terms (subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity), have not been modified, supplemented or waived, and remain in full force and effect.

Section 16.     Other Representations by Agent.     Agent represents and warrants to Borrower that Agent has sought and obtained the approval of the Required Lenders to enter into this Forbearance Agreement on behalf of the Lenders.

Section 17.     Indemnity.     Borrower agrees to indemnify, defend and hold Agent and the Lenders harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses (including, without limitation, legal fees and disbursements, and litigation expenses), actions and causes of action, arising out of or relating to Borrower's or any other Credit Party's breach of any covenant or agreement contained in this Forbearance Agreement, or the incorrectness or inaccuracy of any representation and warranty of Borrower or any other Forbearing Credit Party contained in this Forbearance Agreement. Each Forbearing Credit Party agrees to indemnify, defend and hold Agent and the Lenders harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses (including, without limitation, legal fees and disbursements, and litigation expenses), actions and causes of action, arising out of or relating to such Forbearing Credit Party's breach of any covenant or agreement contained in this Forbearance Agreement, or the incorrectness or inaccuracy of any representation and warranty of such Forbearing Credit Party contained in this Forbearance Agreement.

Section 18.     Entire Agreement.     This Forbearance Agreement constitutes the entire and final agreement among the parties hereto with respect to the subject matter hereof and there are no other agreements, understandings, undertakings, representations or warranties among the parties hereto with respect to the subject matter hereof except as set forth herein.

Section 19.     Remedies.     No failure on the part of Agent or the Lenders or any of their agents to exercise, and no course of dealing with respect to, and no delay in exercising, any

right, power, privilege or remedy hereunder or under the Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise by Agent or the Lenders or any of their agents or any right, power, privilege or remedy hereunder or under the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy.

Section 20.    Headings, Etc.    Section or other headings contained in this Forbearance Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Forbearance Agreement.  This Agreement attaches Schedule I and II.  Numbers, letters or roman numerals preceded by the words "Section" or "Schedule" are referenced to Sections and Schedules of and to this Forbearance Agreement.

Section 21.    VOLUNTARY AGREEMENT.  BORROWER AND EACH OF THE UNDERSIGNED CREDIT PARTIES REPRESENTS AND WARRANTS THAT IT IS REPRESENTED BY LEGAL COUNSEL OF ITS CHOICE, IS FULLY AWARE OF THE TERMS CONTAINED IN THIS FORBEARANCE AGREEMENT AND HAS VOLUNATRILY AND WITHOUT COERCION OR DURESS OF ANY KIND ENTERED INTO THIS FORBEARANCE AGREEMENT, AND THE DOCUMENTS AND AGREEMENTS EXECUTED AND TO BE EXECUTED IN CONNECTION WITH THIS FORBEARANCE AGREEMENT.

Section 22.    Notices.  Any notices, consents or requests which are required or may be given hereunder shall be given to the parties at the addresses and in the manner provided in the Credit Agreement, except that copies of any notices to Agent shall also be sent to:

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Attn.: Mark S. Edelstein, Esq.

In addition, all notices given to the Agent under the Credit Agreement should also be sent to:

John P. McDonagh
Managing Director
JPMorgan Chase
277 Park Avenue – 8th Floor
New York, NY 10172

Section 23.    Further Assurances.  Borrower and each Forbearing Credit Party shall execute all additional documents and do all acts and things not specifically referred to herein which are reasonably necessary to fully effectuate the intent of this Forbearance Agreement which may from time to time be requested by Agent in connection herewith.

Section 24.    Time of Essence.    Time is strictly of the essence of this Forbearance Agreement and full and complete performance of each and every provision hereof.

Section 25.    <u>Negation of Partnership, Etc.</u>  The relationship between Borrower, on the one hand, and Agent and the Lenders, on the other hand, is that of debtor and creditor. Nothing contained in this Forbearance Agreement shall be deemed to create a partnership, joint venture, agency relationship or any other relationship between Agent and the Lenders, on one hand, and any Credit Party, on the other hand, or between Agent and the Lenders, on one hand, and any other person or entity, on the other hand, or to cause Agent or the Lenders to be liable or responsible in any way for the actions, liabilities, debts or obligations of any Credit Party or any other person or entity.

Section 26.    <u>Remedies</u>.  If Borrower or any Forbearing Credit Party should breach this Forbearance Agreement, or any of the terms, covenants, conditions, representations or warranties contained herein, Agent shall be entitled, among other things, to (a) enforce any and all remedies expressly provided for herein, (b) exercise its rights, remedies, powers and privileges under the Loan Documents, and/or (c) seek specific performance or damages by reason of such breach.

Section 27.    <u>Guaranties</u>.    The undersigned Credit Parties reaffirm the Guaranties, in accordance with their terms, executed by each of the Members and their respective Parent Guarantors in connection with the Loans under the Credit Agreement, and the Credit Parties, the Agent and the Lenders agree that nothing herein shall modify, amend or waive any of the provisions of the Guaranties or give rise to any defense to the obligations of the Members and the Parent Guarantors under the Guaranties.

Section 28.    <u>Miscellaneous</u>.    Borrower and each of the Forbearing Credit Parties hereby agree and confirm that to the extent that any payments under or as described in this Forbearance Agreement are made by a Forbearing Credit Party to cover the Adjusted Pro Rata Share of any Non-Forbearing Credit Parties, such payments shall not reduce or otherwise alter the Adjusted Pro Rata Share of the Forbearing Credit Party with respect to any amounts covered by the Loan Documents or otherwise.

[Signatures begin on next page.]

la-975558

12

WHEREOF, the undersigned have caused this Forbearance agreement to be duly executed as of the day and year first above written.

ADMINISTRATIVE AGENT:

JPMORGAN CHASE BANK, N.A., as Lender and Administrative Agent

By:

Name:    JOHN P. McDONAGH

Title:    MANAGING DIRECTOR

BORROWER:

SOUTH EDGE, LLC a Nevada limited- liability company

By:    Holdings Manager, LLC, a Nevada limited-liability company, its general manager

By:
    John A. Ritter
    General Manager

[Signatures continued on next page.]

la-975558

IN WITNESS WHEREOF, the undersigned have caused this Forbearance agreement to be duly executed as of the day and year first above written.

**ADMINISTRATIVE AGENT:**

JPMORGAN CHASE BANK, N.A., as Lender and Administrative Agent

By: _____

    Name: _____

    Title: _____

**BORROWER:**

SOUTH EDGE, LLC a Nevada limited- liability company

By:    Holdings Manager, LLC, a Nevada limited-liability company, its general manager

        By: _____

        John A. Ritter

        General Manager

**[Signatures continued on next page.]**

**CREDIT PARTIES:**

KB HOME NEVADA, INC., a Nevada corporation

By: _[signature]_
    Name: _Donald J. DelGiorno_
    Title: _President_

KB HOME, a Delaware corporation

By: _____
    Name: _____
    Title: _____

FOCUS SOUTH GROUP, LLC, a Nevada
limited-liability company

By: _____
    Name: _____
    Title: _____

_____
John A. Ritter

COLEMAN-TOLL LIMITED PARTNERSHIP, a
Nevada limited partnership

By:    Toll NV GP Corp., a Nevada corporation,
    its general partner

    By: _____
        Name: _____
        Title: _____

TOLL BROTHERS, INC., a Delaware Corporation

By: _____
    Name: _____
    Title: _____

[Signatures continued on next page.]

**CREDIT PARTIES:**

KB HOME NEVADA, INC., a Nevada corporation

By: _____
      Name: _____
      Title: _____

KB HOME, a Delaware corporation

By _____
      Name: *KELLY MASUDA*
      Title: *SVP, TREASURER*

FOCUS SOUTH GROUP, LLC, a Nevada
limited-liability company

By: _____
      Name: _____
      Title: _____


_____
John A. Ritter


COLEMAN-TOLL LIMITED PARTNERSHIP, a
Nevada limited partnership

By:    Toll NV GP Corp., a Nevada corporation,
       its general partner

       By:_____
          Name: _____
          Title: _____

TOLL BROTHERS, INC., a Delaware Corporation

By: _____
      Name: _____
      Title: _____

[Signatures continued on next page.]

la-975558                                14

**CREDIT PARTIES:**

KB HOME NEVADA, INC., a Nevada corporation

By: _____
    Name: _____
    Title: _____

KB HOME, a Delaware corporation

By: _____
    Name: _____
    Title: _____

FOCUS SOUTH GROUP, LLC, a Nevada
limited-liability company
by Focus Investment Manager, LLC, its Manager

By: _____
    Name: John A. Ritter
    Title: Manager

John A. Ritter

COLEMAN-TOLL LIMITED PARTNERSHIP, a
Nevada limited partnership

By:    Toll NV GP Corp., a Nevada corporation,
    its general partner

    By: _____
        Name: _____
        Title: _____

TOLL BROTHERS, INC., a Delaware Corporation

By: _____
    Name: _____
    Title: _____

[Signatures continued on next page.]

la-975558

14

**CREDIT PARTIES:**

KB HOME NEVADA, INC., a Nevada corporation

By: _____
     Name: _____
     Title: _____

KB HOME, a Delaware corporation

By: _____
     Name: _____
     Title: _____

FOCUS SOUTH GROUP, LLC, a Nevada
limited-liability company

By: _____
     Name: _____
     Title: _____


_____
John A. Ritter


COLEMAN-TOLL LIMITED PARTNERSHIP, a
Nevada limited partnership

By:    Toll NV GP Corp., a Nevada corporation,
       its general partner

       By: *Mark Kessler*
       Name: Mark Kessler
       Title: SVP, General Counsel

TOLL BROTHERS, INC., a Delaware Corporation

By: *Mark Kessler*
     Name: Mark Kessler
     Title: SVP, General Counsel

[Signatures continued on next page.]

la-975558               14

PARDEE HOMES OF NEVADA, a Nevada
corporation

By: _____
    Name: *Jon E. Lash*
    Title: *Exec VP & COO*

WEYERHAEUSER REAL ESTATE COMPANY,
a Washington corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES OF NEVADA, INC.
(formerly known as MTH Homes Nevada, Inc.), an
Arizona corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES CORPORATION, a
Maryland corporation

By: _____
    Name: _____
    Title: _____

BEAZER HOMES HOLDING CORP., a Delaware
corporation

By: _____
    Name: _____
    Title: _____

[Signatures continued on next page.]

la-975558                          15

PARDEE HOMES OF NEVADA, a Nevada
corporation

By: _____
    Name: _____
    Title: _____

WEYERHAEUSER REAL ESTATE COMPANY,
a Washington corporation

By: _____
    Name: ___Thomas R. Stocks_____
    Title: ___Vice President and Treasurer___

MERITAGE HOMES OF NEVADA, INC.
(formerly known as MTH Homes Nevada, Inc.), an
Arizona corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES CORPORATION, a
Maryland corporation

By: _____
    Name: _____
    Title: _____

BEAZER HOMES HOLDING CORP., a Delaware
corporation

By: _____
    Name: _____
    Title: _____

[Signatures continued on next page.]

la-975558                        15

PARDEE HOMES OF NEVADA, a Nevada
corporation

By: _____
    Name: _____
    Title: _____

WEYERHAEUSER REAL ESTATE COMPANY,
a Washington corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES OF NEVADA, INC.
(formerly known as MTH Homes Nevada, Inc.), an
Arizona corporation

By: _____
    Name: ROBERT M. BEUTLO
    Title: DIVISION PRESIDENT

MERITAGE HOMES CORPORATION, a
Maryland corporation

By: _____
    Name: _____
    Title: _____

BEAZER HOMES HOLDING CORP., a Delaware
corporation

By: _____
    Name: _____
    Title: _____

[Signatures continued on next page.]

la-975558                          15

PARDEE HOMES OF NEVADA, a Nevada
corporation

By: _____
     Name: _____
     Title: _____

WEYERHAEUSER REAL ESTATE COMPANY,
a Washington corporation

By: _____
     Name: _____
     Title: _____

MERITAGE HOMES OF NEVADA, INC.
(formerly known as MTH Homes Nevada, Inc.), an
Arizona corporation

By: _____
     Name: _____
     Title: _____

MERITAGE HOMES CORPORATION, a
Maryland corporation

By: _____
     Name: _HARRY W. SAY_
     Title: _EVP / CFO_

BEAZER HOMES HOLDING CORP., a Delaware
corporation

By: _____
     Name: _____
     Title: _____

[Signatures continued on next page.]

la-975558                                   15

PARDEE HOMES OF NEVADA, a Nevada
corporation

By: _____
    Name: _____
    Title: _____

WEYERHAEUSER REAL ESTATE COMPANY,
a Washington corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES OF NEVADA, INC.
(formerly known as MTH Homes Nevada, Inc.), an
Arizona corporation

By: _____
    Name: _____
    Title: _____

MERITAGE HOMES CORPORATION, a
Maryland corporation

By: _____
    Name: _____
    Title: _____

BEAZER HOMES HOLDING CORP., a Delaware
corporation

By: _____
    Name: _____
    Title: _____
            Troy Radelat
            Regional CFO
            Phoenix RAC
        Mt. West & Central Region

[Signatures continued on next page.]

BEAZER HOMES USA, INC., a Delaware
Corporation

By: _Allen P. Merrill_
Name: _Allen P. Merrill_
Title: _EVP and CFO_

KIMBALL HILL INC., an Illinois corporation

By: _____
Name: _____
Title: _____

KIMBALL HILL HOMES NEVADA, INC., an
Arizona corporation

By: _____
Name: _____
Title: _____

WOODSIDE GROUP, INC., a Nevada corporation

By: _____
Name: _____
Title: _____

ALAMEDA INVESTMENTS, LLC, a Delaware
limited-liability company

By: _____
Name: _____
Title: _____

Schedule I

Outstanding Indebtedness

| | |
|---|---|
| Facility A | $101,760,500.00 |
| Facility C | $225,000,000.00 |
| Facility D | $1,095,000.00 |

Schedule II

Principal Loan Documents

(All documents dated as of November 1, 2004,
except those designated by (*), which are dated March 9, 2007)

---

1. Amended and Restated Credit Agreement among South Edge, LLC ("Borrower"), JPMorgan Chase Bank, N.A., as Administrative Agent ("Administrative Agent") and the Lenders party thereto.*

2. Amended and Restated Notes - Facility A Loans.*

   A. $30,000,000 Note - Royal Bank of Scotland plc.

   B. $20,000,000 Note - Calyon New York Branch.

   C. $20,000,000 Note - LaSalle Bank National Association.

3. Notes - Facility B Loans.

4. Note - Facility C Loans.

5. Amended and Restated Notes - Facility D Loans.*

   A. $15,000,000 Note - JPMorgan Chase Bank, N.A.

   B. $5,000,000 Note - Wachovia Bank National Association.

   C. $5,000,000 Note - Comerica Bank.

6. Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents and Leases, by Borrower as Trustee to Chicago Title Agency of Nevada as Trustee for the benefit of Administrative Agent recorded November 1, 2004 in Book 20041101 as Document No. 0006330 in Clark County, Nevada.

7. First Amendment to Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents.*

8. Assignment of and Agreement with Respect to Acquisition Agreements among Borrower, Members and Parent Guarantors in favor of Administrative Agent.

9. Assignment of Contracts, Permits and Plans and Specifications by Borrower in favor of Administrative Agent.

la-975558

10.   Environmental Indemnity by Borrower in favor of Administrative Agent.

11.   Consent and Agreement among KB Home Nevada, Inc. ("KB Home Nevada"), Focus South Group, LLC ("Focus"), Coleman-Toll Limited Partnership ("Coleman-Toll"), Alameda Investments, LLC ("Alameda"), Kimball Hill Homes Nevada, Inc. ("Kimball Hill Nevada"), Pardee Homes of Nevada ("Pardee"), Meritage Homes of Nevada, Inc. ("Meritage Nevada"), Beazer Homes Holding Corp. ("BHHC"), KB Home ("KB Home"), John A. Ritter ("Ritter"), Toll Brothers, Inc. ("Toll"), Woodside Group, Inc. ("Woodside"), Kimball Hill, Inc. ("Kimball Hill"), Weyerhaeuser Real Estate Company ("WRECO"), Meritage Homes Corporation ("Meritage"), Beazer Homes USA, Inc. ("Beazer") and Administrative Agent.*

12.   Repayment Guaranty by KB Nevada and KB Home in favor of Administrative Agent for the benefit of the Lenders.

13.   Completion Guaranty by KB Nevada and KB Home in favor of Administrative Agent for the benefit of the Lenders.

14.   Limited Guaranty by KB Nevada and KB Home in favor of Administrative Agent for the benefit of the Lenders.

15.   Repayment Guaranty by Focus and Ritter in favor of Administrative Agent for the benefit of the Lenders.

16.   Completion Guaranty by Focus and Ritter in favor of Administrative Agent for the benefit of the Lenders.

17.   Limited Guaranty by Focus and Ritter in favor of Administrative Agent for the benefit of the Lenders.

18.   Repayment Guaranty by Coleman-Toll and Toll in favor of Administrative Agent for the benefit of the Lenders.

19.   Completion Guaranty by Coleman-Toll and Toll in favor of Administrative Agent for the benefit of the Lenders.

20.   Limited Guaranty by Coleman-Toll and Toll in favor of Administrative Agent for the benefit of the Lenders.

21.   Repayment Guaranty by Alameda and Woodside in favor of Administrative Agent for the benefit of the Lenders.

22.   Completion Guaranty by Alameda and Woodside in favor of Administrative Agent for the benefit of the Lenders.

23.   Limited Guaranty by Alameda and Woodside in favor of Administrative Agent for the benefit of the Lenders.

la-975558                                          2

24.  Repayment Guaranty by Kimball Hill Nevada and Kimball Hill in favor of Administrative Agent for the benefit of the Lenders.

25.  Completion Guaranty by Kimball Hill Nevada and Kimball Hill in favor of Administrative Agent for the benefit of the Lenders.

26.  Limited Guaranty by Kimball Hill Nevada and Kimball Hill in favor of Administrative Agent for the benefit of the Lenders.

27.  Repayment Guaranty by Pardee and WRECO in favor of Administrative Agent for the benefit of the Lenders.

28.  Completion Guaranty by Pardee and WRECO in favor of Administrative Agent for the benefit of the Lenders.

29.  Limited Guaranty by Pardee and WRECO in favor of Administrative Agent for the benefit of the Lenders.

30.  Repayment Guaranty by MTH and Meritage in favor of Administrative Agent for the benefit of the Lenders.

31.  Completion Guaranty by MTH and Meritage in favor of Administrative Agent for the benefit of the Lenders.

32.  Limited Guaranty by MTH and Meritage in favor of Administrative Agent for the benefit of the Lenders.

33.  Repayment Guaranty by BHHC and Beazer in favor of Administrative Agent for the benefit of the Lenders.

34.  Completion Guaranty by BHHC and Beazer in favor of Administrative Agent for the benefit of the Lenders.

35.  Limited Guaranty by BHHC and Beazer in favor of Administrative Agent for the benefit of the Lenders.

36.  UCC-l Financing Statement identifying Borrower as debtor and Administrative Agent as secured party filed November 3, 2004 as Document No. 2004033410-8 with the Nevada Secretary of State.

37.  Certification of Acquisition Agreement among Borrower, KB Home and KB Home Nevada.

38.  Certification of Acquisition Agreement among Borrower, Focus and Ritter.

39.  Certification of Acquisition Agreement among Borrower, Coleman-Toll and Toll.

40.  Certification of Acquisition Agreement among Borrower, Alameda and Woodside.

la-975558                                     3

41. Certification of Acquisition Agreement among Borrower, Kimball Hill Nevada and Kimball Hill.

42. Certification of Acquisition Agreement among Borrower, Pardee and WRECO.

43. Certification of Acquisition Agreement among Borrower, Meritage Nevada and Meritage.

44. Certification of Acquisition Agreement among Borrower, BHHC and Beazer.

45. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and KB Nevada.

46. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and Focus.

47. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and Coleman-Toll.

48. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and Alameda.

49. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and Kimball Hill Nevada.

50. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and Pardee.

51. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and MTH.

52. Certified copy of Purchase and Sale Agreement and Joint Escrow Instructions dated October 29, 2004 between Borrower and BHHC.

53. General Manager's Certificate by Holdings, as general manager of Borrower, with respect to (a) Borrower's articles of organization, (b) Borrower's operating agreement, (c) the resolutions of Borrower's management committee (copies of which (a), (b) and (c) are attached to such certificate) and (d) the incumbency of the general manager of Holdings, together with a certificate of good standing of Borrower issued by the Nevada Secretary of State.*