LEWIS AND ROCA LLP
Robert M. Charles, Jr.
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
Telephone: 702.949.8320
Facsimile:  702.949.8321
E-mail:     rcharles@LRLaw.com

&

MORRISON & FOERSTER LLP
G. Larry Engel (*pro hac vice* pending)
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile:  415.268.7522
E-mail:     lengel@mofo.com

&

MORRISON & FOERSTER LLP
James E. Hough (*pro hac vice* pending)
Norman S. Rosenbaum (*pro hac vice* pending)
Jordan A. Wishnew (*pro hac vice* pending)
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212.468.8000
Facsimile:  212.468.7900
E-mail:     jhough@mofo.com
E-mail:     nrosenbaum@mofo.com
E-mail:     jwishnew@mofo.com

Attorneys for JPMorgan Chase Bank, N.A.,
for itself and as Administrative Agent

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| In re:<br><br>SOUTH EDGE, LLC,<br><br>                 Involuntary Debtor. | Case No.: 10-32968 (BAM)<br><br>Chapter 11<br><br>**Declaration of John P. McDonagh In Support of JPMorgan Chase Bank N.A.'s Ex Parte Motion to File Confidential Materials Regarding Involuntary Petition Under Seal**<br><br>**Hearing Information**<br>Date: _____, 2010<br>Time:      [ ]<br>Courtroom: [ ] |

ny-954048

1
DECLARATION OF JOHN P. McDONAGH

I, John P. McDonagh, declare pursuant to 28 U.S.C. § 1746, as follows:

## INTRODUCTION

1. I am a Managing Director at JPMorgan Chase Bank, N.A. (hereinafter, "JPMorgan"). I have held this position at JPMorgan for over 15 years and have been employed by JPMorgan and its predecessor for 35 years. The facts in this affidavit are based on my personal knowledge, the documents maintained in JPMorgan's files relating to this matter, and my discussions with various JPMorgan employees.

2. I submit this Declaration In Support of JPMorgan's (in its capacity as a petitioning creditor herein) Ex Parte Motion to File Confidential Materials Regarding Involuntary Petition Under Seal (the "Motion"), filed with the Court on December 9, 2010. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

3. JPMorgan is a lender with respect to the Credit Agreement. JPMorgan also serves as the Agent under the Credit Agreement.

4. Entirely separate from these roles, JPMorgan, through its secondary loan operations and in the ordinary course of its business, functions as a market-maker for certain debts, including the debt under the Credit Agreement. In this capacity, JPMorgan acts through buying and selling positions in the debt of the Debtor arising under the Credit Agreement, none of which was bought or sold by JPMorgan for the purpose of filing the involuntary petition.

5. As of the date hereof, JPMorgan, through its secondary loan operations, holds two of those positions. Neither of those claims are asserted or included in the Petition. However, out of an abundance of caution, in the attachments to the Petition filed herein, JPMorgan has identified those claims and has submitted certain documents regarding those claims (the "Debt Trade Documents"). The Debt Trade Documents include trade confirms, Assignment and Assumption agreements and schedules thereto including Standard Terms for Assumption and Assignment; purchase price letters and Purchase and Sale Agreements. The Debt Trade Documents filed as attachments to the Petition have been redacted to the extent necessary to protect confidential and proprietary information.

6. JPMorgan seeks to protect information in the Debt Trade Documents relating to the entities who sold and assigned the debt to JPMorgan, the names of the principals and employees of

those entities, the amounts for which JPMorgan bought such debts, the relevant dates relating to those acquisitions, certain terms and conditions relating to the sale and assignment, and other proprietary and confidential information.

7.  The information JPMorgan seeks to protect is not available to the public and is both confidential and proprietary. The Standard Terms and Conditions for Distressed Trade Confirmations published by the Loan Syndications and Trading Association (the "Standard Terms") include a confidentiality provision. The Standard Terms are incorporated by reference into the trade confirms, one of the Debt Trade Documents to which JPMorgan is a party, and require JPMorgan to keep the terms of debt trades confidential. Copies of the Standard Terms as of January 12, 2010 and August 6, 2010 are attached hereto as **Exhibit A**. Specifically, paragraph 21 of the Standard Terms, entitled "Confidentiality of Terms of Transaction" provides as follows:

> Both parties shall maintain the confidentiality of the terms of the Transaction unless otherwise required by law or regulatory authority, or other legal process, except that the parties may disclose the terms of the Transaction to their respective affiliates, and the directors, officers, employees, agents, advisors, counsel and auditors of such parties and of such parties' affiliates and in connection with the enforcement of the parties' respective rights and obligations hereunder. Buyer shall be permitted to make any necessary disclosures to prospective purchasers from Buyer regarding the terms of the Transaction (other than the Purchase Rate or Purchase Price), provided that such purchasers shall be subject to substantially the same confidentiality restrictions.

8.  Moreover, the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the Loan Syndications and Trading Association (the "Purchase and Sale Standard Terms") include a similar non-disclosure provision. The Purchase and Sale Standard Terms are incorporated by reference into the Purchase and Sale Agreements, another of the Debt Trade Documents to which JPMorgan is a party, which also requires JPMorgan to keep the terms of debt trades confidential. Copies of the Purchase and Sale Standard Terms as of as of January 12, 2010 and August 6, 2010 are attached hereto as **Exhibit B**. Specifically, paragraph 15.1 of the Purchase and Sale Standard Terms, entitled "Disclosure" provides as follows:

> Each Party agrees that, without the prior consent of the other Party, it shall not disclose the contents of this Agreement (or the Purchase Price Letter (including the Purchase Price and the Purchase Rate) to any Entity, except that any Party may make any such disclosure (a) as required to implement or enforce this Agreement, (b) if required to do so by any law, court,

ny-954048

3

DECLARATION OF JOHN P. McDONAGH

regulation, subpoena or other legal process, (c) to any Governmental Authority or self-regulatory Entity having or asserting jurisdiction over it, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other Entity or sanctions that may be imposed by any Governmental Authority, (e) to its respective Affiliates and the directors, officers, employees, agents, advisors, counsel and auditors of such Party and of such Party's Affiliates or (f) as set forth in Section 15.2.

9. Disclosure of the unredacted Debt Trade Documents could potentially expose JPMorgan to liability for breach of this confidentiality provision. Moreover, public disclosure of this information would provide a significant advantage to JPMorgan's competitors because it could potentially reveal the strategies JPMorgan employs in connection with its secondary loan operations. The strategies JPMorgan utilizes in connection with its secondary loan operations are highly proprietary.

10. Moreover, if competitors are given the information that JPMorgan seeks to protect, then they will potentially be able to use that information to JPMorgan's detriment because the Debt Trade Documents include information concerning price, volume and timing, all of which could be used against JPMorgan by participants in the secondary market.

11. In addition, disclosure of the price at which the debt under Credit Agreement has traded in the secondary market could potentially be used by certain participants in the secondary market to place a value on the debt at very early stage in this proceeding to the detriment of the Lenders.

1  I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of
2  December, 2010 at New York, New York.

_____
John P. McDonagh